**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Anit K. Jindal, OSB #171086**
AnitJindal@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085

    Special Assistant Attorneys General for Defendants


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **WILLAMETTE FAMILY, INC.**, an Oregon non-profit corporation, | Case Nos.  6:22-cv-00978-MK |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR ATTORNEY'S FEES** |
| v. | |
| **PATRICK ALLEN**, in his official capacity, **DAVID BADEN**, in his official capacity, and **FRITZ JENKINS**, in his official capacity, | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR ATTORNEY'S FEES**

# TABLE OF CONTENTS

CERTIFICATE OF COMPLIANCE ............................................................... 1

MOTIONS ............................................................................................................ 1

INTRODUCTION................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

I.   As a participant in state-funded healthcare programs, Willamette Family
     is subject to regulations governing the documentation of its services and
     can be audited for failure to comply. ....................................................... 2

II.  A provider, such as Willamette Family, can contest OHA audit findings in
     a contested case proceeding.................................................................... 4

III. Willamette Family disagrees with the scope of discovery in the contested
     case proceedings, in particular the lack of discovery depositions. ................. 4

LEGAL STANDARDS.......................................................................................... 6

ARGUMENT ....................................................................................................... 8

I.   This Court should dismiss this case under the *Younger* abstention
     doctrine. ............................................................................................... 8

II.  Willamette Family's complaint fails to state a procedural due process
     claim. ................................................................................................. 11

     A.   Willamette Family does not have a constitutionally protected property
          interest in receiving reimbursements from the State............................. 12

     B.   Even if Willamette Family has a constitutionally protected property
          interest, the State is affording Willamette Family more than adequate
          process. ........................................................................................ 13

          1.   The State has provided Willamette Family notice and an
               opportunity to be heard. ......................................................... 13

          2.   The Due Process Clause does not guarantee the right to pre-
               hearing discovery. ................................................................. 16

III. Willamette Family's complaint fails to state a void-for-vagueness claim.................. 17

     A.   Willamette Family cannot state a void-for-vagueness claim because it
          does not have a constitutionally protected interest in receiving
          reimbursements. ............................................................................. 17

     B.   The regulations at issue in this case are sufficiently detailed to pass
          constitutional muster........................................................................ 17

     C.   Auditor discretion to decide whether to pursue a particular regulatory
          violation does not render the underlying regulations unconstitutional................. 21

IV.  The Court should dismiss this case because Willamette Family's claims
     are unripe.............................................................................................. 23

**V.    This Court should award defendants their reasonable attorney's fees because this action is unreasonable, frivolous, and without foundation...................... 26**

**CONCLUSION .......................................................................................................... 28**

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Acura of Bellevue v. Reich*,
  90 F.3d 1403 (9th Cir. 1996) ..................................................................... 24

*Advance Corporation v. Baltimore County, Maryland*,
  2022 WL 4225475 (D. Maryland, 2022) ............................................. 20, 23

*Alcoa, Inc. v. Bonneville Power Admin.*,
  698 F.3d 774 (9th Cir. 2012) ..................................................................... 24

*Alsager v. Bd. of Osteopathic Med. & Surgery*,
  945 F. Supp. 2d 1190 (W.D. Wash. 2013) ................................................... 9

*Applied Underwriters, Inc. v. Lara*,
  530 F. Supp. 3d 914 (E.D. Cal. 2021) ......................................................... 6

*Arce v. Douglas*,
  793 F.3d 968 (9th Cir. 2015) ................................................................. 18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 6, 7

*Baffert v. California Horse Racing Bd.*,
  332 F.3d 613 (9th Cir. 2003) ..................................................................... 11

*Bay River, Inc. v. Environmental Quality Commission*,
  26 Or. App. 717 (1976) .............................................................................. 15

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 6

*Berkowitz v. Shah, 12 CIV.*,
  5227 JSR, 2013 WL 93504 (S.D.N.Y. Jan 4, 2013) ................................. 15

*Bristol-Myers Squibb Co. v. Connors*,
  979 F.3d 732 (9th Cir. 2020) ....................................................................... 8

*Chapman v. Pier 1 Imports*,
  631 F.3d 939 (9th Cir. 2011) ....................................................................... 7

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
  953 F.3d 655 (9th Cir. 2020) ..................................................................... 27

*Concourse Rehab. & Nursing Ctr., Inc. v. DeBuono*,
  179 F.3d 38 (2d Cir. 1999) ......................................................................... 15

*Daniel v. City of Tampa, Fla.*,
  843 F.Supp. 1445 ....................................................................................... 22

*Delta Dental Plan of California, Inc. v. Mendoza*,
  139 F.3d 1289 (9th Cir. 1998) ............................................................. 10, 11

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
  92 F.3d 1486 (9th Cir. 1996) ..................................................................... 26

*Edge v. City of Everett*,
  929 F.3d 657 (9th Cir. 2019) ................................................................... 18, 19
*Electromec Design & Development Co. v. N.L.R.B.*,
  409 F.2d 631 (9th Cir. 1969) ................................................................... 16
*Espinosa v. United Student Aid Funds, Inc.*,
  553 F.3d 1193 (9th Cir. 2008) ................................................................. 14
*Fang Lin Ai v. United States*,
  809 F.3d 503 (9th Cir. 2015) ................................................................... 19
*Fantasyland Video, Inc. v. Cnty. of San Diego*,
  373 F. Supp. 2d 1094 (S.D. Cal. 2005) .............................................. 20, 21
*First Resort, Inc. v. Herrera*,
  860 F.3d 1263 (9th Cir. 2017) ................................................................. 21
*Fox v. Vice*,
  563 U.S. 826 (2011) ................................................................................. 26
*Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*,
  805 F.2d 1353 (9th Cir. 1986) ................................................................. 9
*Garmong v. Cnty. of Lyon*,
  807 Fed.Appx. 636 (9th Cir. 2020) ......................................................... 27
*Grayned v. City of Rockford*,
  408 U.S. 104, (1972) ................................................................................ 18
*Green v. City of Tucson*,
  255 F.3d 1086 (9th Cir. 2001) ................................................................. 10
*Hanlester Network v. Shalala*,
  51 F.3d 1390 (9th Cir. 1995) ................................................................... 18
*Heckler v. Chaney*,
  470 U.S. 821, (1985) ................................................................................ 22
*Hirsh v. Justices of Supreme Court of State of Cal.*,
  67 F.3d 708 (9th Cir. 1995) ..................................................................... 9
*Interstate Nat. Gas Co. v. S. California Gas Co.*,
  209 F.2d 380 (9th Cir. 1953) ................................................................... 7
*Kelly v. U.S. E.P.A.*,
  203 F.3d 519 (7th Cir. 2000) ................................................................... 16
*King v. California Dept. of Water Resources*,
  561 F. Supp. 3d 906 (E.D. Cal. 2021) .................................................... 7
*Kropat v. F.A.A.*,
  162 F.3d 129 (D.C. Cir. 1998) ................................................................. 16
*Lang v. Berger*,
  427 F.Supp. 204 (S.D.N.Y. 1977) .......................................................... 18
*Llewellyn v. Board of Chiropractic Examiners*,
  318 Or. 120 (1993) ................................................................................... 11
*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*,
  874 F.3d 604 (9th Cir. 2017) ................................................................... 16
*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982) ................................................................................. 9
*Minder v. State of Ga.*,
  183 U.S. 559, (1902) ................................................................................ 16

*Miranda v. City of Casa Grande*,
    15 F.4th 1219 (9th Cir. 2021) ................................................................... 13
*N.L.R.B. v. Globe Wireless*,
    193 F.2d 748 (9th Cir. 1951) ..................................................................... 16
*N.L.R.B. v. Valley Mold Co., Inc.*,
    530 F.2d 693 (6th Cir. 1976) ..................................................................... 16
*Nat'l Park Hospitality Ass'n v. Dept. of Interior*,
    538 U.S. 803 (2003) ................................................................................. 24
*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    491 U.S. 592 (1975) ................................................................................... 8
*Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.*,
    477 U.S. 619 (1986) ................................................................................... 8
*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987) ..................................................................................... 11
*Prime Healthcare Servs., Inc. v. Harris*,
    216 F Supp 3d 1096 (S.D. Cal. 2016) ........................................................ 23
*RLI Ins. Co. v. R&L Brosamer, Inc.*,
    2006 WL 194109 (E.D. Cal. Jan 18, 2006) ................................................. 6
*Roberts v. U.S. Jaycees*,
    468 U.S. 609, (1984) ................................................................................ 18
*Robles v. Domino's Pizza, LLC*,
    913 F.3d 898 (9th Cir. 2019) .............................................................. 17, 18
*Sachdev v. Oregon Med. Bd.*,
    312 Or. App. 392 (2021) ..................................................................... 11, 15
*San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*,
    825 F.2d 1404 (9th Cir. 1987) ...................................................... 12, 13, 17
*Senator v. Sentman*,
    2013 WL 12244452 (C.D. Cal. Apr. 10, 2013)…………………………………....23

*Spence v. State of Wash.*,
    418 US 405 (1974) ................................................................................... 22
*State of Cal., Dep't of Educ. v. Bennett*,
    833 F.2d 827 (9th Cir. 1987) .................................................................... 24
*Sun Sav. & Loan Ass'n v. Dierdorff*,
    825 F.2d 187 (9th Cir. 1987) ...................................................................... 6
*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...................................................................... 7
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................... 7
*Texas v. United States*,
    523 U.S. 296 (1998) ................................................................................. 24
*Tingley v. Ferguson*,
    No. 21-35815, No. 21-35856, 2022 WL 4076121 (9th Cir. 2022) ................. 18
*Tomaszczuk v. Whitaker*,
    909 F.3d 159 (6th Cir. 2018) .................................................................... 17
*Trainor v. Hernandez*,
    431 U.S. 434 (1977) ................................................................................. 10

*United Books, Inc. v. Conte,*
   739 F.2d 30 (1st Cir. 1984) ............................................................ 9, 10
*United States v. Augenblick,*
   393 U.S. 348 (1969) ............................................................................ 16
*United States v. Awand,*
   467 Fed.Appx 609 (9th Cir. 2012) ..................................................... 23
*United States v. Backlund,*
   689 F.3d 986 (9th Cir. 2012) .............................................................. 20
*United States v. Batchelder,*
   442 U.S. 114 (1979) ............................................................................ 22
*United States v. Bychak,*
   No. 18-CR-4683-GPC, 2021 WL 734371 (S.D. Cal. Feb. 25, 2021) ...................................... 26
*United States v. Christie,*
   825 F.3d 1048 (9th Cir. 2016) ............................................................ 17
*United States v. Cutler,*
   806 F.2d 933 (9th Cir. 1986) .............................................................. 16
*United States v. Ford,*
   2016 WL 4443171 (D. Or. Aug 22, 2016) ........................................... 26
*United States v. Larson,*
   746 F.2d 455 (8th Cir. 1984) ……………………………………………………..22, 23

*United States v. Lucero,*
   989 F.3d 1088 (9th Cir. 2021) ............................................................ 18
*United States v. Nat'l Dairy Prod. Corp.,*
   372 U.S. 29, (1963) ............................................................................. 18
*United States v. Quintero,*
   995 F.3d 1044 (9th Cir. 2021) ............................................................ 15
*United States v. Schaefer,*
   No. 3:17-CR-00400-HZ, 2019 WL 267711 (D. Or. Jan. 17, 2019) ...................................... 26
*United States v. Wunsch,*
   84 F.3d 1110 (9th Cir. 1996) .............................................................. 18
*Vernon v. City of Los Angeles,*
   27 F.3d 1385 (9th Cir. 1994) .............................................................. 26
*Walker v. Fred Meyer, Inc.,*
   953 F.3d 1082 (9th Cir. 2020) .............................................................. 7
*Weatherford v. Bursey,*
   429 U.S. 545 (1977) ............................................................................ 16
*Wilkinson v. Austin,*
   545 U.S. 209 (2005) ..................................................................... 11, 12
*Witt v. Dept. of Air Force,*
   527 F.3d 806 (9th Cir. 2008) .............................................................. 24
*Younger v. Harris,*
   401 U.S. 37 (1971) ...................................................................... *passim*

## **Statutes**

42 U.S.C. § 1983 ................................................................................................ 26
42 U.S.C. § 1988(b) ........................................................................................ 1, 26
ORS 183.341(2) ................................................................................................. 14
ORS 183.480 ..................................................................................................... 15
ORS 183.482(1) ................................................................................................. 15
ORS 183.482(3) ................................................................................................. 15
ORS 414.018(1) ................................................................................................. 10

## **Rules**

Fed. R. of Evid. 201(b) ........................................................................................ 7
Federal Rule of Civil Procedure ("FRCP") 12 ........................................... passim

## **Regulations**

8 N.M. Admin. Code § 8.326.2.11 ..................................................................... 19
29 D.C. Mun. Reg. 2401.11(e) .......................................................................... 21
New Jersey Admin. Code, 10:47-7.10 ............................................................... 21
OAR 137-003-501 ............................................................................................... 4
OAR 137-003-0600 ............................................................................................. 4
OAR 137-003-0566(1)(a)-(e) .................................................................. 4, 14, 25
OAR 137-003-0568(7) ............................................................................. 4, 14, 25
OAR 137-003-0572(2) ......................................................................................... 4
OAR 309-019-0135(3) ......................................................................................... 3
OAR 309-019-0140(3)(d) ....................................................................... 3, 19, 20
OAR 309-019-0105(120) .................................................................................... 21
OAR 407-120-0100(31) ....................................................................................... 2
OAR 410-120-1860 ........................................................................................... 14
OAR 410-120-1360(2) ................................................................................... 3, 10
OAR 410-120-1396(1) ................................................................................ passim
OAR Chapter 309 ................................................................................................ 3
OAR Chapter 407 ............................................................................................ 2, 3
OAR Chapter 410 ................................................................................................ 3
S.D. Admin. R. 67:16:41:08(9) .......................................................................... 19

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7-1, the parties made a good faith effort through telephone conferences to resolve the disputes that are the subject of these motions and have been unable to do so.

## MOTIONS

Defendants Patrick Allen, in his official capacity as Director of the Oregon Health Authority, David Baden, in his official capacity as the Oregon Health Authority's Chief Financial Officer, and Fritz Jenkins, in his official capacity as the Oregon Health Authority's Administrator for Program Integrity, respectfully submit the following Federal Rule of Civil Procedure ("FRCP") 12 motions: (1) motion to dismiss under FRCP 12(b)(1) or (6) all claims for relief based on the *Younger* abstention doctrine, and (2) motion to dismiss all claims for relief under FRCP 12(b)(6) for failure to state any claims upon which relief can be granted.

If this Court grants either motion, defendants also respectfully move for attorney's fees pursuant to 42 U.S.C. § 1988(b).

## INTRODUCTION

In *Younger v. Harris*, 401 U.S. 37, 91 (1971) and its progeny, the United States Supreme Court held that federal courts may not interfere with ongoing state proceedings. *Younger* is built on elementary principles of comity and federalism and it is not discretionary: If a case meets the proscriptions of *Younger*, the district court *must* dismiss the action.

In this case, Willamette Family asks this Court to do what *Younger* and its progeny forbid: disrupt an ongoing state administrative proceeding so that Willamette Family can obtain special treatment not available to any other person engaged in administrative proceedings with the State of Oregon. What Willamette Family is asking is extraordinary. There is no law, no authority, and no precedent *anywhere* in the United States that permits a federal court to order discovery in an ongoing state proceeding. Willamette Family's claims are not merely meritless, they are frivolous and vexatious.

At any given time, there are thousands of contested cases pending in front of Oregon administrative agencies.  Adopting Willamette Family's due process arguments here would allow those parties and all future litigants access to the federal court to circumvent state administrative processes and demand federal oversight of interlocutory discovery issues.  This change in federal and state law would create significant confusion and burden in both systems.  For obvious reasons, federal law prohibits this result.  Willamette Family is presently engaged in a robust administrative process that allows it a full hearing, a chance to examine and cross-examine witnesses, the opportunity to raise state and federal constitutional issues, and the right to appeal through Oregon's appellate courts.  There is no basis for federal interference in Oregon's administrative process.

This action must be dismissed with prejudice and before discovery for multiple reasons: First, *Younger* abstention requires dismissal.  Second, Willamette Family does not have any constitutionally protected interests in receiving reimbursements from the State.  Third, even if it did, there is no constitutional right to full pre-hearing discovery in administrative proceedings.  Fourth, Willamette Family's claims are unripe; its administrative proceedings are ongoing.  And fifth, Oregon's administrative rules are not unconstitutionally vague.  This Court should not only dismiss the complaint with prejudice, it should award defendants their attorney's fees to compensate Oregon's taxpayers for the cost of defending this frivolous lawsuit.

## FACTUAL BACKGROUND

**I.    As a participant in state-funded healthcare programs, Willamette Family is subject to regulations governing the documentation of its services and can be audited for failure to comply.**

Willamette Family has a contract with the State to provide healthcare services to Oregonians in certain public health programs.  *See* Am. Compl. ¶¶ 6-7, 58 (alleging that Willamette Family is a "provider" subject to OAR chapter 407, division 120); *see also* OAR 407-120-0100(31) (defining "provider" as an "individual, facility, institution corporate entity, or other organization which supplies or provides" services "pursuant to a contract.").  OHA reimburses Willamette Family for the services it provides to covered individuals.  (Am. Compl.

¶¶ 6-7.)  Because it participates in these programs, and receives public funding, Willamette Family is subject to a body of regulations overseen by OHA.  *See generally*, OAR Chapter 309, OAR Chapter 407, OAR Chapter 410.

These regulations contain various requirements for Willamette Family's documentation of the healthcare services it provided to Oregonians and for which it received reimbursement from OHA.  *See, e.g.*, OAR 309-019-0135(3) (requiring Willamette Family to conduct an entry assessment to ensure that an individual receives certain services and that those services are documented).  Among other things, Willamette Family's documentation must support the reimbursements that Willamette Family obtained from OHA, must describe the relationship of the services to the treatment objective described in the service plan, and must include periodic updates regarding the patient's progress.  *See, e.g.*, OAR 410-120-1360(2) (stating that documentation must "support[s] the specific care, items, or services for which payment has been requested."); OAR 309-019-0140(3)(d) (stating that documentation must include "relationship of the services provided to the treatment objective described in the service plan"); OAR 309-019-0140(3)(g) (stating that documentation must include "[p]eriodic updates describing the individual's progress").

The regulatory scheme also subjects Willamette Family to potential audits from OHA to ensure compliance with statutes and rules governing reimbursement from state public health programs.  OAR 410-120-1396(1).  OHA can recover an "overpayment" if an audit reveals that Willamette Family submitted a claim for payment that did not comply with the agency's statutes and rules.  *Id.*  Audits pursuant to OAR Division 410, Chapter 120 are a multi-step process with frequent opportunities for input from the provider.  First, after reviewing information submitted by the provider, the OHA auditor produces a preliminary audit report.  OAR 410-120-1396(10).  If the provider disagrees with the preliminary audit report's findings, the provider can submit additional information.  *Id.*  Then, the auditor prepares a final audit report.  OAR 410-120-1396(11).  The final audit report includes an overpayment amount, findings, and recommendations.  *Id.*  Once a provider receives a final audit report, it can submit a "written

request for either an administrative review or a contested case hearing" if the provider disagrees with the report or the overpayment amount. OAR 410-120-1396(11)(c).

## II.    A provider, such as Willamette Family, can contest OHA audit findings in a contested case proceeding.

Here, Willamette Family has requested contested case hearings in response to the findings and recommendations in the three final audit reports it received. (Am. Compl. ¶¶ 51-53.) Contested case hearings challenging audit findings are conducted in front of an administrative law judge. OAR 137-003-501, *et seq*. They are full adversarial proceedings in which the parties are represented by counsel, may present evidence and witnesses, and may cross-examine the other side's witnesses. OAR 137-003-0600.

Prior to the hearing, the agency or party may request discovery in five different categories: (1) a list of witnesses expected to testify at the hearing; (2) documents that the party or agency plans to offer as evidence; (3) objects for inspection if the party or agency intends to offer the objects as evidence; (4) responses to no more than 20 requests for admission; and (5) responses to no more than 20 written interrogatories. OAR 137-003-0566(1)(a)-(e). If a party desires additional discovery, it can request it from the agency and if the request is denied, file a motion with the administrative law judge for an order requiring the discovery. OAR 137-003-0568(7). The administrative law judge may authorize discovery "reasonably likely to produce information that is generally relevant to the case and necessary or likely to facilitate resolution of the case." OAR 137-003-0568(4). Further, a party before an agency can issue public records requests for additional information. OAR 137-003-0566(9). However, a party in a contested case proceeding is not entitled to take discovery depositions. Instead, depositions are generally used to preserve the testimony of witnesses who will be unavailable for the hearing, not for discovery purposes. OAR 137-003-0572(2).

## III.    Willamette Family disagrees with the scope of discovery in the contested case proceedings, in particular the lack of discovery depositions.

OHA initiated six audits related to Willamette Family's billing practices and documentation. (Am. Compl. ¶ 45.) Only three of those audits have resulted in preliminary and

final audit reports. (*Id.* ¶¶ 51-56.) In general, the audit reports found many instances in which Willamette Family failed to adequately document the services it provided when seeking payment from the State for those services. (*See* Decl. of Anit Jindal in Supp. of Mot. to Dismiss Pl.'s Am. Compl. ("Jindal Decl.") Exs. 1-2.) The first final audit report recommended that OHA recover $6,089.71 in overpayments. (Am. Compl. ¶ 51; Jindal Decl. Ex. 1 at 8.) The second final audit report recommended that OHA recover $52,879.29. (Am. Compl. ¶ 52; Jindal Decl. Ex. 2 at 12.) The third final audit report recommended that OHA recover $2,618,655.21. (Am. Compl. ¶ 53; Jindal Decl. Ex. 3 at 1.)

Willamette Family requested contested case hearings in response to all three final audit reports. (Am. Compl. ¶¶ 51-53.) In advance of those hearings, Willamette Family requested certain discovery. (*Id.* ¶¶ 60-63, 75-76.) Among other things, Willamette Family sought to take the deposition of the original OHA auditor assigned to the audits, Deborah Larkins, and later requested to take the deposition of "governmental agency personnel involved in" the audits, without identifying particular individuals. (*Id.* ¶¶ 75-76; Jindal Decl. Exs. 4-6 OHA Orders denying petition to take depositions, Jan. 2022 petition.) OHA denied those deposition requests, citing various formal deficiencies in the requests and the regulation that only permits pre-hearing perpetuation depositions, not discovery depositions. (Am. Compl. ¶¶ 58, 63, 66-78, 90-92; Jindal Decl. Exs. 4-5.) OHA also noted that any OHA witnesses would be subject to cross-examination at the hearing. (Jindal Decl. Ex. 5 at 2.)

Willamette Family's complaint also alleges that OHA has produced "some documents" and some "data" in response to its discovery requests, but OHA has failed to produce "sufficient data" in response to discovery requests. (Am. Compl. ¶¶ 60, 62, 89.) Despite requesting that this Court order OHA to produce additional "data," Willamette Family has not sought an order from the administrative law judge requiring that OHA produce additional document discovery. *See Id.* ¶¶ 59-63 (describing document discovery efforts).

The contested case hearings on the first two audits were consolidated into a single proceeding.[1]  (Jindal Decl. Ex. 7.)  In July, the administrative law judge overseeing the hearing process set a schedule in which OHA would present its case-in-chief the week of January 30, 2023, and Willamette Family would then have six weeks to prepare its witnesses, with Willamette Family's defensive case beginning March 13, 2023.  (Jindal Decl. Ex. 8.)  The administrative law judge's schedule also requires the parties to exchange witness lists and proposed exhibits on January 13, over two weeks before OHA begins its case-in-chief.  (*Id.*)

## LEGAL STANDARDS

FRCP 12(b)(6) provides that a claim must be dismissed when it "fail[s] to state a claim upon which relief can be granted."  The facts alleged in the complaint must amount to a claim for relief "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  A claim is plausible on its face only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  The complaint must be dismissed if the factual allegations allow only "a sheer possibility that the defendant has acted unlawfully."  *Id.*  When a court considers a motion to dismiss, the court construes all allegations of the complaint in the plaintiff's favor.  *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).

A motion seeking dismissal on abstention grounds can be filed under Rule 12(b)(1) or 12(b)(6).  *See Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 923 (E.D. Cal. 2021) ("A motion to dismiss on *Younger* abstention grounds is . . . properly brought under Rule 12(b)(1)."); *RLI Ins. Co. v. R & L Brosamer, Inc.*, S-05-2238 WBSGGH, 2006 WL 194109, at *2 (E.D. Cal. Jan 18, 2006) (holding that abstention is properly raised under 12(b)(6)).  Federal Rule of Civil Procedure 12(b)(1) provides that a court must grant a motion to dismiss if it lacks subject-matter jurisdiction.

---

[1] The parties agreed to defer a hearing on the third audit report until after the hearing on the first and second audit report is complete.

**Page 6 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR ATTORNEY'S FEES**

To assess the adequacy of a complaint, a court must begin by identifying those allegations that are no more than legal conclusions, and thus are not entitled to the assumption of truth. *Ashcroft*, 556 U.S. at 678 (holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Chapman v. Pier 1 Imports*, 631 F.3d 939, 955 n.9 (9th Cir. 2011) (explaining that a "formulaic recitation" of the elements of a claim is "insufficient," a plaintiff must allege more than conclusions that "parrot the language of" the law that was allegedly violated).

Further, when considering either a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court can consider facts that are judicially noticeable under Fed. R. of Evid. 201(b) and documents whose contents are incorporated by reference in the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

A court may take judicial notice of the existence of administrative agency records. *See, e.g.*, *Interstate Nat. Gas Co. v. S. California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) ("We may take judicial notice of records and reports of administrative bodies."); *King v. California Dept. of Water Resources*, 561 F. Supp. 3d 906, 910 (E.D. Cal. 2021) ("Under Rule 201, administrative agency records, including decisional documents, are subject to judicial notice."). When a court takes judicial notice of an agency record, it may take judicial notice of the documents "as they are" but not the "correctness of any determinations therein." *King*, 561 F. Supp. 3d at 910.

Here, the final audit reports, discovery requests and responses, discovery motions, and discovery orders are incorporated by reference in the complaint because their contents are alleged in the complaint. (Am. Compl. ¶¶ 1-4, 45-63, 65-76, 80, 82-84, 89-94, 101-102); *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1085 n.1 (9th Cir. 2020). Similarly, these documents are agency records that are subject to judicial notice. *Interstate Nat. Gas Co.*, 209 F.2d at 385. OHA does not cite these agency records for the correctness of any determinations therein but instead for undisputed procedural information (*e.g.*, scheduled hearing dates) and to demonstrate

the issues being addressed in litigation before the agency, regardless of which party's position is correct.

**ARGUMENT**

This Court should dismiss the complaint under FRCP 12(b)(1) and (6) because the *Younger* abstention doctrine applies and the complaint fails to state a plausible claim for relief. Under well-established precedent, this Court should abstain from interfering with ongoing, state enforcement proceedings; Willamette Family has no constitutionally protected property interest in healthcare reimbursements from the State; Oregon administrative hearings comport with due process; OHA's audit regulations provide fair notice of the information Medicaid providers must include in their bills; and the claims are unripe. For any one of these reasons, or all of them, the Court should dismiss the complaint and award defendants their attorney's fees.[2]

**I.      This Court should dismiss this case under the *Younger* abstention doctrine.**

Under the doctrine of *Younger* abstention, this Court must abstain from interfering with ongoing state administrative proceedings. In *Younger v. Harris*, 401 U.S. 37, 46 (1971), the Supreme Court announced that federal courts should avoid enjoining ongoing state proceedings. Although *Younger* itself involved an injunction against state criminal proceedings, the Supreme Court has since expanded the doctrine to include "civil enforcement actions" in which the state initiates administrative proceedings against a plaintiff for some wrongful act. *Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 735 (9th Cir. 2020) (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 592, 604 (1975)) (describing nature of "civil enforcement action" and applying to state-initiated false advertising suit against drug manufacturer); *see also Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 628 (1986) (applying *Younger* to state administrative proceeding brought by state agency to enforce non-discrimination laws against private school).

---

[2] By bringing these motions, defendants do not intend to waive any other potential defenses, including Eleventh Amendment immunity. Defendants expressly reserve their right to raise Eleventh Amendment immunity (or any other defense) later.

*Younger* abstention requires dismissal when the state civil enforcement proceedings (1) are ongoing; (2) implicate an important state interest; and (3) allow litigants to raise federal challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432(1982). *Younger* abstention is not discretionary; if each of the three elements are met, this Court *must* dismiss this litigation. *Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*, 805 F.2d 1353, 1356 (9th Cir. 1986) ("When a case falls within the proscription of *Younger*, a district court must dismiss the federal action."). Because all three elements are met in this case, this Court must dismiss this action.

First, there are ongoing state proceedings. OHA initiated its audits in March 2018 and has already requested and received information pertinent to all six audits. (Am. Compl. ¶¶ 45, 51-56); *see also* OAR 410-120-1396(5), (6) (noting that audit includes requesting and reviewing information from the provider). OHA's auditors issued final audit reports for three of the six audits in 2018, 2019, and 2021, respectively. (Am. Compl. ¶¶ 50-52; Jindal Decl. Exs. 1-2.) Willamette Family requested contested case proceedings challenging each audit report within 30 days of each audit report's issuance. (Am. Compl. ¶¶ 51-53; Jindal Decl. Exs. 8-9.) Accordingly, these audit proceedings are ongoing. *See Hirsh v. Justices of Supreme Court of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (holding that state proceedings were ongoing where state filed notice to show cause prior to full administrative hearing.).

Willamette Family's claims with respect to the three audits that have been initiated, but have not resulted in any audit reports, are also ongoing. Where a state regulatory agency initiates a formal investigation of potential wrongdoing, state proceedings are ongoing for *Younger* purposes. *Alsager v. Bd. of Osteopathic Med. & Surgery*, 945 F. Supp. 2d 1190, 1195 (W.D. Wash. 2013), aff'd, 573 Fed Appx 619 (9th Cir. 2014) (holding that state proceedings were ongoing where regulatory board-initiated investigation of wrongdoing). Also, where a plaintiff is in ongoing state proceedings, a federal court should not indirectly interfere with those proceedings by entertaining a due process challenge to identical future proceedings. *See United Books, Inc. v. Conte*, 739 F.2d 30, 32 (1st Cir. 1984) (rejecting plaintiff's argument that *Younger*

abstention did not apply because plaintiff sought "only to enjoin future prosecutions, not those currently pending").

The second element is met because the state administrative proceedings at issue here implicate important state interests. As the Supreme Court has held, an enforcement action "vindicate[s] important state policies" when the state seeks to "safeguard[] the fiscal integrity of" a public assistance program. *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (state welfare program). Similarly, the Ninth Circuit has explained that state regulations governing the reimbursement rates for healthcare providers are specifically an important state interest because such regulations are designed to "insure low-cost, high quality health care" for citizens. *Delta Dental Plan of California, Inc. v. Mendoza*, 139 F.3d 1289, 1295 (9th Cir. 1998) disapproved of on other grounds by *Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001) (addressing California regulations governing insurance reimbursement rates for dentists).

OHA administers state healthcare programs and has a budget of nearly $30 billion, Oregon's largest budget item.[3] One in four Oregonians receive healthcare from the Oregon Health Plan, the OHA-administered state Medicaid program.[4] The purpose of those government programs is "to achieve the goals of universal access to an adequate level of high quality health care at an affordable cost." ORS 414.018(1). As an entity that contracts with OHA to provide health services to Oregonians in these programs, Willamette Family is subject to a body of state statutes and regulations that ensure, among other things, that the healthcare services that Willamette Family seeks taxpayer funding to provide are adequately and accurately documented. *See, e.g.*, OAR 410-120-1360(2) (requiring documentation that "supports the specific care, items, or services for which payment has been requested"). The statute delegating authority to OHA to audit providers such as Willamette Family explains that the purpose of auditing is to "discover possible instances of fraud, waste, and abuse in the Medicaid member program." OAR 410-120-1396. Enforcing state statutes and regulations pertaining to the expenditure of public healthcare

---

[3] H.B. 5024, 81st Leg. Assembly, Reg. Sess. (Or. 2021).

[4] Oregon Health Plan Monthly Medicaid Reports, https://www.oregon.gov/oha/hsd/ohp/pages/reports.aspx (Last visited Oct. 11, 2022)

funds is therefore an important state interest because it furthers the legislative purpose of providing Oregonians low-cost, high-quality healthcare and discovering waste, fraud, and abuse in Oregon's largest budget item. *See, e.g.*, *Delta Dental Plan*, 139 F.3d at 1291.

Finally, Willamette Family can raise its due process concerns in the state proceedings themselves. "[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). To avoid abstention, Willamette Family must demonstrate that "[s]tate procedural law bar[s] presentation of [Willamette Family's] claims." *Id.* at 14. Here, state agencies can consider federal due process challenges to their application of procedural rules. *Cf. Llewellyn v. Board of Chiropractic Examiners*, 318 Or. 120, 127-28 (1993) (holding that appellant failed to preserve procedural due process challenge by not raising it with the agency first). Further, the Oregon Court of Appeals can address any due process challenges on judicial review. *See Sachdev v. Oregon Med. Bd.*, 312 Or. App. 392, 393 (2021) (addressing due process arguments in judicial review of agency decision). Indeed, *Younger* itself addressed a void-for-vagueness challenge to a state criminal prosecution. *See Younger,* 401 U.S. at 40. The Supreme Court explained that federal intervention was premature, in part, because the state proceedings could result in a "narrowing construction" that eliminated any vagueness concerns with the law in question. *Id.* at 51.

All the components of *Younger* abstention are present in this case. Granting Willamette Family's requested relief would require this Court to do exactly what the *Younger* doctrine prohibits: enjoining an ongoing state enforcement proceeding. This Court, therefore, *must* dismiss this action. *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003) ("If the circumstances giving rise to *Younger* abstention apply, the district court must dismiss the action.").

## II.    Willamette Family's complaint fails to state a procedural due process claim.

The right to procedural due process arises only when a constitutionally protected interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Therefore, courts analyze procedural due process claims according to two steps. First, the Court decides whether the plaintiff

possesses a constitutionally protected interest.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  If not, the inquiry ends.  *Id.* ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").  If, however, the plaintiff shows that it has a protected property interest, the Court then must consider, on a case-by-case basis, whether the plaintiff received the process that it was due.  *Wilkinson*, 545 U.S. at 224.  A due process claim, accordingly, requires (1) that the plaintiff establish that it has a protected interest and (2) that the state's procedures were constitutionally inadequate.

Here, Willamette Family's claim fails at both steps of the due process analysis. Willamette Family does not have any constitutionally protected property interests at stake and, even if it did, the State has provided Willamette Family will more than adequate process.

### A.    Willamette Family does not have a constitutionally protected property interest in receiving reimbursements from the State.

Willamette Family has no constitutionally protected property interest in "reimbursement by OHA for the services that Willamette Family provided."  (Am. Compl. ¶ 88.)  Not every contract with the state creates a property interest protected by the due process clause.  Instead, in assessing whether a particular property interest is protected by the due process clause, a court must consider "the security with which the interest is held under state law and . . . the importance of the interest to the holder as an individual."  *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, 1409 (9th Cir. 1987) (cleaned up).  In the context of state independent contractors, the Ninth Circuit has cautioned, "[i]t is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim."  *Id.* at 1408.

The Ninth Circuit has specifically held that an entity that contracts with the government to provide healthcare services has no constitutionally protected interest in reimbursement from the government for the services it provides.  In *San Bernardino*, a physicians group contracted with a county to provide healthcare services at a county-operated medical center.  *Id.* at 1409. The physicians group brought a complaint alleging a procedural due process violation because

the county, among other things, "conducted unwarranted and overly intrusive audits of the Group's records" and "delayed payments due." *Id.* at 1406. The Ninth Circuit held that the physicians group's procedural due process claims failed because the group lacked a protected property interest in its contractual relationship with the county. The court explained that the group's remedy "if any, lies in state law." *Id.* at 1410.

 *San Bernadino* disposes of Willamette Family's complaint. Willamette Family is a state contractor that provides healthcare services to Oregonians pursuant to a contract with OHA. The only protected property interest that Willamette Family seeks to vindicate is its interest in receiving the fruits of its contract with OHA, namely "reimbursement . . . for the services that Willamette Family provided." (Am. Compl. ¶ 88.) Here too, Willamette Family contends that intrusive state-law audits threaten its ability to receive reimbursement for its medical services. (*Id.* ¶¶ 41, 58, 71-76.) Under binding precedent, Willamette Family's interest in receiving reimbursement from OHA is not the type of property interest protected by the federal due process clause. Instead, Willamette Family's remedy "if any, lies in state law." *San Bernardino Physicians' Servs.*, 825 F.2d at 1410.

  **B. Even if Willamette Family has a constitutionally protected property interest, the State is affording Willamette Family more than adequate process.**

   **1. The State has provided Willamette Family notice and an opportunity to be heard.**

 Willamette Family's procedural due process claims fail because OHA has not deprived Willamette Family of any process due. It is well-established that the due process clause requires only notice and an opportunity to be heard. *See, e.g.*, *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1225 (9th Cir. 2021) ("The touchstone of procedural due process is notice and an opportunity to be heard." (citation omitted)). Willamette Family has received or will receive both.

 First, Willamette Family received constitutionally adequate notice. The standard for what amounts to constitutionally adequate notice is "fairly low" and merely requires that notice be "reasonably calculated" to inform a party of the pendency of the proceedings and afford them

the opportunity to present objections.  *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir. 2008), *aff'd*, 559 US 260 (2010) (citation omitted).  Each of the three final audit reports provided Willamette Family with ample information for it to understand the proceedings and present its objections.  (Jindal Decl. Exs. 1-2.)  Each audit report identified the precise universe of claims at issue, the precise sample of claims OHA reviewed in the audit, a claim-by-claim assessment of which claims in the sample set contained errors, and a detailed description of the errors found.  (*Id.*)  This information provides Willamette Family with ample notice of the issues raised by the audits.  Willamette Family submitted its claims information to the State for reimbursement and is in the best position to confirm or deny the veracity and completeness of its own documentation.  OHA's audit reports therefore provide adequate notice for Willamette Family to craft its objections.

Second, OHA's administrative rules provide for a contested case hearing that satisfies all the elements of due process.  Oregon's Administrative Procedures Act requires agencies to adopt rules for the conduct of contested case proceedings.  ORS 183.341(2).  OHA has adopted the Oregon Attorney General's Model Rules for contested case proceedings before administrative law judges.  OAR 410-120-1860.  Under those rules, upon request, OHA must provide Willamette Family with a list of witnesses, documents, and other evidence that it plans to offer at the hearing.  OAR 137-003-0566.  The rules also provide for discovery, including public records requests, interrogatories, and requests for admission.  *Id.*  Willamette Family has used some of these tools to obtain discovery documents from the State.  OAR 137-003-0568(3); (Am. Compl. ¶¶ 60, 62, 89).  If Willamette Family requires more document discovery it may file a motion with the administrative law judge for an order requiring the discovery.  OAR 137-003-0568(1).  Notably, despite seeking an injunction from this Court requiring OHA to produce more "data," Willamette Family has not even sought the same relief from the administrative law judge overseeing discovery in its contested case.  (*See* Am. Compl. ¶¶ 60-63 (describing document discovery efforts)).

In addition, OHA's rules allow Willamette Family to request a "100 percent audit," *i.e.*, an audit of "all billings" in the given time period, not just a random sample.  OAR 410-120-

1396(8)(b).  Willamette Family has not requested a 100 percent audit, despite disputing OHA's sampling methodology in its complaint in this court.

At the hearing itself, Willamette Family will be represented by counsel and may cross-examine any OHA witnesses and ask its questions about OHA's sampling methodology. Further, Willamette Family will then have at least *six weeks* to prepare its witnesses, including any expert witnesses, to testify after hearing OHA's case.  Willamette Family has no serious basis for its contention that this process deprives it of a "meaningful opportunity to respond to OHA's allegations."  As the Ninth Circuit has explained, "[a] hearing, attended by counsel, with an opportunity to testify, to present evidence, to subpoena witnesses, to confront and cross-examine witnesses, and to seek reconsideration of an adverse decision is the core of American due process."  *United States v. Quintero*, 995 F.3d 1044, 1056 (9th Cir. 2021).

Further, Willamette Family can seek judicial review in the Oregon courts.  In the context of healthcare providers in Medicaid programs, courts have held that improper state audits that make findings of overpayments do not violate procedural due process if the state administrative procedures law permits judicial review of the audit findings.  *Berkowitz v. Shah*, 12 CIV. 5227 JSR, 2013 WL 93504, at *2 (S.D.N.Y. Jan 4, 2013) (dismissing procedural due process claim brought by state Medicaid provider challenging overpayments assessed through allegedly flawed state audit process); *Concourse Rehab. & Nursing Ctr., Inc. v. DeBuono*, 179 F.3d 38, 46 (2d Cir. 1999) (same).

Here, Willamette Family can seek judicial review of any final contested case decision in Oregon state court.  "The Oregon Administrative Procedures Act, [ORS chapter 183], establishes a comprehensive pattern for the judicial review of administrative decisions."  *Bay River, Inc. v. Environmental Quality Commission*, 26 Or. App. 717, 720 (1976); *see also* ORS 183.480; ORS 183.482(1); ORS 183.482(3).  Willamette Family can re-raise its procedural due process claims on judicial review and can also argue that the state law entitled it to the depositions and data it seeks.  *See Sachdev*, 312 Or. App. at 393 (addressing due process arguments in judicial review of agency decision).  The availability of this post-hearing judicial review is all the process that is due.

**Page 15 - DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR ATTORNEY'S FEES**

2.    **The Due Process Clause does not guarantee the right to pre-hearing discovery.**

The Fourteenth Amendment does not guarantee Willamette Family the right to full pre-hearing discovery.  As the Ninth Circuit has explained, "not even constitutional due process . . . requires full pretrial discovery."  *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 618 (9th Cir. 2017) (citation omitted).  Other circuits agree.[5]  Further, prior to the 1938 amendments to the Federal Rules of Civil Procedure there was no *statutory* right to full pretrial discovery in federal *judicial* proceedings.  *Id.*  Indeed, the United States Constitution does not even include a right to full discovery in criminal cases, where the deprivation of individual liberty interests is potentially far more severe than the alleged property interest here.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case[.]"); *Minder v. State of Ga.*, 183 U.S. 559, 562, (1902); *see also United States v. Cutler*, 806 F.2d 933, 936 (9th Cir. 1986) ("No court has allowed a [Criminal] Rule 15 deposition solely for discovery.").

The Ninth Circuit has similarly held that due process does not require pre-hearing depositions in administrative proceedings.  *N.L.R.B. v. Globe Wireless*, 193 F.2d 748, 751 (9th Cir. 1951); *Electromec Design & Development Co. v. N.L.R.B.*, 409 F.2d 631, 635 (9th Cir. 1969).  Courts have also rejected the assertion that the due process clause entitles litigants to specific document discovery.  *See, e.g.*, *United States v. Augenblick*, 393 U.S. 348, 356 (1969) (holding that due process did not require disclosure of notes from investigative interview).  Here, Willamette Family received constitutionally adequate notice, has several mechanisms for written and document discovery, will have a constitutionally adequate hearing procedure, and has access to judicial review.  It has received all the process that is due.

_____

[5] *See, e.g, N.L.R.B. v. Valley Mold Co., Inc.*, 530 F.2d 693, 695 (6th Cir. 1976) ("It is well settled that parties to judicial or quasi-judicial proceedings are not entitled to discovery as a matter of constitutional right."); *Kelly v. U.S. E.P.A.*, 203 F.3d 519, 523 (7th Cir. 2000) ("[T]here is no constitutional right to pretrial discovery in administrative proceedings); *Kropat v. F.A.A.*, 162 F.3d 129, 132 (D.C. Cir. 1998) ("[A]s a matter of constitutional law, [plaintiff] is simply wrong in suggesting that 'formal,' pre-hearing discovery, of the sort that might be available under the Federal Rules of Civil Procedure, must be provided to satisfy procedural due process.").

III.    **Willamette Family's complaint fails to state a void-for-vagueness claim.**

A.    **Willamette Family cannot state a void-for-vagueness claim because it does not have a constitutionally protected interest in receiving reimbursements.**

Willamette Family's void-for-vagueness theory also fails.[6]  A person must have a constitutionally protected property interest to raise a void-for-vagueness challenge.  *Tomaszczuk v. Whitaker*, 909 F.3d 159, 164 (6th Cir. 2018) ("An individual must establish that [he or] she has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause before being allowed to raise a Due Process challenge. . . .  Because Petitioner is a deportable alien with an interest only in discretionary relief, he may not bring this void-for-vagueness challenge under the Due Process Clause." (quotation marks and citation removed)); *United States v. Christie*, 825 F.3d 1048, 1064 n.5 (9th Cir. 2016) (noting void-for-vagueness precedent based on penal statutes or areas where persons have due process interests).

As discussed above, Willamette Family does not have a protected property interest in receiving reimbursement from the State.  *San Bernardino Physicians' Servs. Med. Grp., Inc.*, 825 F.2d at 1410.  Accordingly, Willamette Family cannot state a claim that Oregon's regulations are void because they are too vague.

B.    **The regulations at issue in this case are sufficiently detailed to pass constitutional muster.**

Regardless, OHA's regulations are not vague.  A regulation is void-for-vagueness "only if it is so indefinite in its terms that it fails to articulate comprehensible standards to which a person's conduct must conform."  *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 906 (9th Cir. 2019).  An impermissibly vague statute violates due process because it does not give fair notice of conduct that is forbidden or required.  *Id.*  A statute is vague not when it prohibits conduct according to an imprecise but comprehensible normative standard, but rather in the sense that no

---

[6] As noted above, Sec. I, Willamette Family can raise a void-for-vagueness challenge in its ongoing state administrative proceedings.  Because Willamette Family can raise the issue in that forum, and has access to judicial review, this Court must abstain.  *See Younger*, 401 U.S. at 40.  In *Younger*, which involved a void-for-vagueness claim, the Supreme Court explained that federal intervention was premature because the state proceedings could result in a "narrowing construction" that eliminated any vagueness concerns with the law in question.  *Id.* at 51.

standard of conduct is specified at all.  *Id.*  As the Ninth Circuit and the Supreme Court have recognized, "condemned to the use of words, we can never expect mathematical certainty from our language."  *United States v. Lucero*, 989 F.3d 1088, 1101 (9th Cir. 2021) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110, (1972)).  Instead, a law may be "marked by flexibility and reasonable breadth, rather than meticulous specificity," if "it is clear what the ordinance as a whole prohibits."  *Id.*  A law is not void for vagueness merely because "there will be close cases requiring some degree of law enforcement subjectivity" when enforcing the laws.  *Edge v. City of Everett*, 929 F.3d 657, 666 (9th Cir. 2019).  Instead, a law is void for vagueness if people "must necessarily guess at its meaning."  *Id.* at 665 (citation and quotation omitted).

Economic regulations are governed under a less stringent standard of specificity than criminal laws or restrictions on speech.  *Robles*, 913 F.3d at 906; *see also Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995) (applying lower standard to federal Medicaid regulations).  The standard is lower still for terms with technical or special meaning in a law directed at a select group of persons having specialized knowledge, such as healthcare providers.  *Tingley v. Ferguson*, No. 21-35815, No. 21-35856, 2022 WL 4076121 at *26 (9th Cir. 2022).

Successful void-for-vagueness challenges to economic regulations are rare.  In *United States v. Nat'l Dairy Prod. Corp.*, the Supreme Court upheld an anti-trust law barring certain businesses from offering "unreasonably low prices."  372 U.S. 29, 31, (1963).  In *Robles*, the Ninth Circuit upheld anti-discrimination laws requiring businesses to offer "full and equal enjoyment" of services to people with disabilities.  913 F.3d at 909.  Similarly, courts in other jurisdictions have upheld professional standards for doctors and hospitals requiring that doctors provide "proper care" and adhere to "professionally recognized health care standards."  *Lang v. Berger*, 427 F.Supp. 204, 211-212 (S.D.N.Y. 1977).  Tellingly, of the four vagueness cases Willamette Family cites in its complaint, three held that the law in question was constitutional and the fourth case implicated the First Amendment.[7]

---

[7] *See United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996) (holding that bar rule limiting "offensive" attorney speech would "have the effect of chilling some speech that is constitutionally protected"); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629, (1984) (upholding state law prohibiting gender discrimination in "public accommodations"); *Arce v. Douglas*, 793 F.3d

Here, OHA's audit regulations do not come close to violating the due process clause. Willamette Family challenges subparagraphs (d) and (g) of OAR 309-019-0140(3).  Those regulations provide:

> (3) Providers shall document each service and support in a service note to include:

> (d) The relationship of the services provided to the treatment objective described in the service plan;

> …

> (g) Periodic updates describing the individual's progress.

Here, Medicaid providers are not "left to guess" what information they must document to obtain reimbursement from OHA.  OAR 309-019-0140(3)(d) requires exactly what it states: documentation of the "relationship" between the "services provided" and the "treatment objective described in the service plan."  Willamette Family purports to be confused by the word "relationship."  (Am. Compl. ¶¶ 71, 81.)  But the meaning of that word is subject to common meaning and "easily discerned through recourse to a common dictionary." *Edge*, 929 F.3d at 665; *see also* Webster's 3d New Int'l Dictionary (1993) (defining "relationship" as "the state of being related or interrelated"); *see also id*. (defining "relation" as "an aspect or quality (such as resemblance) that connects two or more things or parts as being or belonging or working together or as being of the same kind.")  Medicaid regulations across the country contain similar documentation requirements.[8]  Willamette Family does not cite, and OHA has not found, a single case questioning the constitutionality of these standard, industry-wide regulations.

---

968, 989 (9th Cir. 2015) (upholding state law prohibiting public schools from "promot[ing] resentment toward a race or class of people"); *Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015) (upholding FICA tax statute).

[8] *See, e.g.*, West Virginia Health & Human Resources, Bureau for Medical Services, Provider Manual, Ch. 502 § 502.25 Person-centered Support, (requiring certain West Virginia Medicaid providers to document "[r]eason/purpose for the service and *relationship* of the service to the member's identified behavioral health treatment needs"); 8 N.M. Admin. Code § 8.326.2.11 (requiring New Mexico Medicaid providers to document "*relationship* of the service furnished to goals identified in the plan of care"); S.D. Admin. R. 67:16:41:08(9) (requiring certain South Dakota Medicaid providers to document "*relationship* of the service to the treatment plan objectives and goals"); Community Psych Rehab Program Manual, 13.11.M(2)

**Page 19 - DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR ATTORNEY'S FEES**

OAR 309-019-0140(3)(g) requires that Medicaid providers' service notes include "periodic updates" regarding a patient's "progress." Here, Willamette Family finds the word "periodic" confusing. (Am. Compl. ¶¶ 72, 83, 84.). But Willamette Family has failed to state a claim for an as-applied vagueness challenge based on the phrase "periodic updates." "[V]agueness challenges to [regulations] that do not involve First Amendment violations must be examined as applied to the defendant." *United States v. Backlund*, 689 F.3d 986, 997 (9th Cir. 2012). Willamette Family alleges that OHA's audits faulted Willamette Family for failing to include a "statement quantifying individual progress" with specific bills.[9] (Am. Compl. ¶ 83.) But whether Willamette Family adequately quantified progress in its notes addresses the content of the notes not their frequency. Thus, any vagueness in the word "periodic" is irrelevant to Willamette Family's conduct. Willamette Family further alleges that its notes "clearly indicated a patient's progress at the top of the service note" even where OHA's auditors found otherwise. (Am. Compl. ¶ 84.) But at most Willamette Family alleges that OHA erroneously applied a clear regulation, not that the regulation itself was unclear. Willamette Family will have ample opportunity to argue that it "clearly" complied with OHA's regulations in the contested case proceedings.[10]

Regardless, the word "periodic" is not so vague as to prevent Willamette Family from having fair notice of what the regulation requires. "Periodic" has a common, dictionary definition. Webster's 3d New Int'l Dictionary (1993) (defining "periodic" as "occurring or recurring at regular intervals" or "occurring repeatedly from time to time"); *see, e.g.*, *Fantasyland Video, Inc. v. Cnty. of San Diego*, 373 F. Supp. 2d 1094, 1125 (S.D. Cal. 2005),

---

Documentation Requirements (requiring certain Missouri Medicaid providers to document the "*relationship* of the services to the treatment regimen described in the treatment plan").)

[9] For context, OHA asserts that Willamette Family violated OAR 309-019-0140(g) by failing to quantify progress in only four instances, totaling $488.21 in potential repayments both final audit reports at issue in the upcoming hearing. (Jindal Decl. Ex. 2 at 58, 61, 102, and 137.)

[10] As one district aptly explained: "[T]o the extent [plaintiff] argues the prohibition is vague because it is being erroneously enforced, the vagueness doctrine is not the appropriate vehicle to vindicate that claim. An officer's enforcement of a 10:00 p.m. curfew at 8:15 p.m., for example, does not render the 10:00 p.m. curfew vague." *See Advance Corporation v. Baltimore County, Maryland*, 2022 WL 4225475, *9 (D. Maryland, 2022).

rev'd on other grounds, *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935 (9th Cir. 2007) (holding that "'regularly' is a word of common understanding and of sufficient definiteness that ordinary people can understand.").

Further, when assessing a vagueness challenge to a law, the court must look at the challenged provision in the context of the law as a whole. *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1274 (9th Cir. 2017) ("[O]therwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity.")  Here, other contextual provisions provide additional guidance regarding the meaning of "periodic updates" regarding "progress" in the "service notes."  OAR 309-019-0105(120) defines "Service Note" to include "documentation of progress toward intended outcomes consistent with the timelines stated in the service plan."  Thus, "periodic" progress notes are judged against the "the timelines stated in the service plan" for "intended outcomes."  Even if there are "close cases" requiring discretionary decision making as to whether given notes were sufficiently frequent to be "periodic" in the context of the timelines in the service plan, that fact alone does not render the regulation so standardless as to be unconstitutional.  And medical billing regulations in other states also require that providers document progress notes periodically and OHA has not found any cases questioning the constitutionality of these requirements.[11]  Accepting Willamette Family's void-for-vagueness theory would call into question medical billing regulations across the country.

**C.    Auditor discretion to decide whether to pursue a particular regulatory violation does not render the underlying regulations unconstitutional.**

Willamette Family is also wrong that OHA's audit regulations are void because OHA auditors retain "discretion" to determine whether a regulatory violation "rises to the level of a billing error subject to recoupment."  (Am. Compl. ¶ 68.)  Willamette Family alleges that OHA has a "policy" that permits auditors to distinguish between "financial" and "administrative" errors when deciding whether to seek recoupment of funds for a particular documentation error.

---

[11] *See, e.g.*, New Jersey Admin. Code, 10:47-7.10 (New Jersey regulation requiring "clinical and/or progress notes *periodically*"); 29 D.C. Mun. Reg. 2401.11(e) (DC regulation requiring "*periodic* updates, and regular progress notes in the patient's record").

(*Id.* ¶ 69).  Willamette Family alleges that OHA policy permitted Ms. Larkins and other OHA auditors to "use their own judgment in gauging the intent of the provider and the seriousness of the improper billing" when deciding whether to recoup overpayments for violations of OHA's audit regulations.  (*Id.*)

      The fact that individual agency officials could exercise their prosecutorial discretion differently does not render the underlying law void for vagueness.  It is black-letter law that agency officials have discretion to decide whether to pursue a given statutory violation.  *See generally Heckler v. Chaney*, 470 U.S. 821, 831, (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.") (citation omitted).  The Supreme Court has long held that a law is not unconstitutionally vague just because executive branch personnel retain normal prosecutorial discretion to determine whether to pursue a given violation.  *Spence v. State of Wash.*, 418 US 405, 414 n.9 (1974).  To be sure, vague laws are problematic because they create the risk of selective enforcement.  But to state a void-for-vagueness theory Willamette Family must demonstrate that "the words of the statute at issue . . . were *themselves* sufficiently indefinite to prompt subjective treatment by prosecutorial authorities."  *Id.* (emphasis added); *see also Daniel v. City of Tampa, Fla.*, 843 F.Supp. 1445, 1448 (M.D. Fl. (1993)) ("The enforcement scheme is to some extent subject to prosecutorial discretion, so common sense dictates that only the statute itself need convey to the public a sufficiently definite warning as to the proscribed conduct.").

      Conversely, a regulatory scheme that permits executive officials to decide between alternative punishments or no punishment at all for the same proscribed conduct is not void-for-vagueness just because different regulators may have made different prosecutorial decisions.  In *United States v. Batchelder*, two criminal statutes provided different penalties for "essentially the same conduct."  442 U.S. 114, 121-22 (1979).  The Supreme Court held that the statutory scheme was not void for vagueness even though individual prosecutors had discretion to choose between "various alternative punishments" for the same conduct.  *Id.* at 123.  Similarly, in *U.S. v. Larson*, a cattle rancher appealed his criminal conviction for trespass on forest service land,

arguing that similar trespasses were met with administrative fines in the past. 746 F.2d 455, 456 (8th Cir. 1984). The Eighth Circuit affirmed holding that the forest service's "previous forbearance" did not render void-for-vagueness the different prosecutorial decision in the rancher's case. *Id.* Similarly, in *United States v. Awand*, the Ninth Circuit held that the IRS's previous imposition of civil penalties for failure to file taxes did not render a criminal statute void for vagueness in a later criminal prosecution. 467 Fed.Appx 609, 610 (9th Cir. 2012). District courts have similarly held that the existence of executive branch discretion when enforcing laws does not render the underlying laws void for vagueness. *See*, *e.g.*, *Prime Healthcare Servs., Inc. v. Harris*, 216 F Supp 3d 1096, 1124 (S.D. Cal. 2016) ("The void for vagueness doctrine is not an instrument for obtaining desirable results from discretionary decisionmaking."); *Advance Corporation v. Baltimore County, Maryland*, No. DLB-21-2926, 2022 WL 4225475, *9 (D. Maryland, Sept. 13, 2022) ("[P]rosecutorial discretion does not render a law unconstitutionally vague.").

Here, Willamette Family's theory that OHA auditors retained "discretion" to excuse instances of "improper billing" based on the "seriousness" of the offense and provider "intent" is a textbook example of prosecutorial discretion. (Am. Compl. ¶ 69.) The mere fact that individual OHA officials retain "discretion" to seek a sanction less than recoupment of funds in the face of a regulatory violation does not render the regulations "themselves" void for vagueness. Any contrary rule would render nearly every law subject to attack because executive branch officials always exercise discretion when deciding which legal violations to pursue. *See Senator v. Sentman*, SA CV 10-1600-SVW (PLA), 2013 WL 12244452, at *8 (C.D. Cal. Apr. 10, 2013), report and recommendation adopted, SA CV 10-1600 SVW (PLA), 2014 WL 12738271 (C.D. Cal. Dec. 8, 2014) ("It is neither abnormal nor constitutionally problematic to entrust a prosecutor to exercise his or her discretion in determining whether and what charges to file against an individual.")

## IV.     The Court should dismiss this case because Willamette Family's claims are unripe.

Willamette Family's procedural due process claims are not ripe for adjudication because Willamette Family's deprivation has not occurred and may never occur. Like all other claims, a

pre-enforcement due process challenge to an administrative agency decision must be ripe before a federal court will weigh in.  *See Witt v. Dept. of Air Force*, 527 F.3d 806, 812–13 (9th Cir. 2008) (holding that procedural due process claim was unripe).  A claim does not present a ripe case or controversy as required by Article III of the constitution if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also Witt*, 527 F.3d at 812–13 (holding that procedural due process claim was unripe where injury "may or may not occur").  Courts also look to two prudential factors to determine whether a claim is ripe: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 808 (2003).  Under either test, Willamette Family's claims are unripe.

A claim is fit for decision if the issues raised are primarily legal and the administrative action is final.  *State of Cal., Dep't of Educ. v. Bennett*, 833 F.2d 827, 833 (9th Cir. 1987) (citations omitted).  The initiation of a contested proceeding before an administrative law judge is not a "final" action ripe for judicial review.  *See Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408 (9th Cir. 1996) (holding that Department of Labor's notice of assessments and penalties was not ripe for judicial review when the notices were subject to a full hearing before an administrative law judge).  Here, Willamette Family alleges that OHA has initiated six audits pertaining to its documentation of claims for reimbursement.  (Am. Compl. ¶¶ 51-56.)  Three of those audits are still in the investigative stage.  (*Id.* ¶¶ 54-56.)  OHA has requested information from Willamette Family, but OHA has not issued preliminary or final audit reports with respect to those investigations.  (*Id.*)  Accordingly, it is speculative whether OHA will ever issue audit reports with adverse findings against Willamette Family, whether Willamette Family will disagree with the findings, whether Willamette Family will pursue contested case proceedings, what level of pre-hearing discovery it will seek, whether OHA or the administrative law judge will deny Willamette Family's hypothetical discovery requests in those hypothetical proceedings, and whether those hypothetical denials will violate due process as applied to the

**Page 24 - DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR ATTORNEY'S FEES**

particular facts at issue in each hypothetical proceeding.  In sum, it is speculative whether Willamette Family will ever pay a refund, and thus its claims are unripe.  And in any case, Willamette Family will be afforded ample due process of law before making any payments.

Three investigations have resulted in final audit reports that recommend that Willamette Family refund overpayments to OHA.  But Willamette Family admits that OHA has not required it to pay the overpayment amounts identified in the audits during the pendency of the contested case proceedings.  *See* Am. Compl. ¶ 45 ("Willamette Family faces over $10 million in *potential* liability" (emphasis added)); *Id.* ¶ 88 (alleging that "*[i]f*" OHA forced Willamette Family to repay," it will suffer harm (emphasis added)); *Id.* ¶ 93 ("There is an extremely high *risk* of erroneous deprivation" (emphasis added)).

Willamette Family's only "potential" injury is the "risk" that limitations on pre-hearing discovery will hamper its ability to prepare a defense.  But as described in greater detail above, Willamette Family can still make use of other discovery procedures, including filing a motion with the administrative law judge for additional discovery and serving requests for admission or interrogatories.  OAR 137-003-0566 and OAR 137-003-0568.  Further, prior to the hearing, Willamette Family will receive OHA's proposed exhibits and witness list.  (Jindal Decl. Ex. 8.) Until discovery ends, OHA produces its witnesses and proposed exhibits, and OHA presents its case, it is completely speculative whether Willamette Family will be deprived of a "meaningful opportunity" to respond to OHA's case or whether any such "meaningful opportunity" truly requires pre-hearing discovery not currently available under the Attorney General's Model Rules.  Further, Willamette Family will have six weeks to prepare its witnesses after hearing from OHA's witnesses, so it is speculative whether its defense efforts will truly be hampered by the absence of the precise pre-hearing discovery it seeks today, or whether the alleged lack of discovery (*e.g.*, prehearing depositions) will affect the outcome in the hearing.  Because Willamette Family's claims depend on "contingent future events" that may or may not occur, its claims are unripe.  Any contrary rule would permit litigants in every Oregon contested case proceeding to demand federal oversight of interlocutory discovery orders.

**Page 25 - DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR ATTORNEY'S FEES**

Willamette Family's void-for-vagueness theory is also unripe.  "Where there are insufficient facts to determine the vagueness of a law as applied, the issue is not ripe for adjudication." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996). As this Court has explained, an as-applied, void-for-vagueness challenge is "premature" before trial in the underlying enforcement action because the challenge "requires the fact-finder to determine the facts from the admitted evidence and testimony heard at trial." *United States v. Ford*, 3:14-CR-00045-1-HZ, 2016 WL 4443171, at *1 (D. Or. Aug 22, 2016), aff'd, 821 Fed Appx 742 (9th Cir. 2020); *see also United States v. Schaefer*, No. 3:17-CR-00400-HZ, 2019 WL 267711, at *8 (D. Or. Jan. 17, 2019) (holding that plaintiff must "wait to bring his as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in").  Other district courts in the Ninth Circuit have reached the same conclusion.  *See*, *e.g.*, *United States v. Bychak*, No. 18-CR-4683-GPC, 2021 WL 734371, at *8 (S.D. Cal. Feb. 25, 2021) ("The Court concludes that the void for vagueness challenge is premature in that . . . it is a challenge 'as-applied to the facts' that must await trial."). Here, the administrative hearing has not yet occurred and therefore it is premature to evaluate whether OHA's regulations and policies are void as applied to Willamette Family.  Conversely, it is too early to tell whether Willamette Family's misconduct was sufficiently "serious" or "intentional" to render OHA's discretionary enforcement policy vague as applied to it.  Instead, Willamette Family must pursue the normal administrative process.

**V.    This Court should award defendants their reasonable attorney's fees because this action is unreasonable, frivolous, and without foundation.**

This Court, under 42 U.S.C. § 1988(b), has discretion to award reasonable attorney's fees to the prevailing party in an action under 42 U.S.C. § 1983.  A fee award is appropriate to a prevailing defendant where plaintiff's suit is unreasonable, frivolous, or without foundation. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (internal quotation omitted); *see also Fox v. Vice*, 563 U.S. 826, 833 (2011) (explaining that, if the defendant is the prevailing party, the district court may award fees under § 1988(b) "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation").  Attorney's fees are appropriate where a

court dismisses a claim before reaching the merits because the complaint states only "generalized, speculative injuries" or "fail[s] to articulate or plausibly allege necessary elements of [the] constitutional claims." *Garmong v. Cnty. of Lyon*, 807 Fed.Appx. 636, 640 (9th Cir. 2020). Attorney's fees are also appropriate under Section 1988 where the court dismisses a complaint for equitable relief on *Younger* abstention grounds. *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655, 659 (9th Cir. 2020).

Here, for the reasons described above Willamette Family's complaint is unreasonable, frivolous, and without foundation. *Younger* abstention applies, under on-point, Ninth Circuit precedent, Willamette Family has no protected property interest in its healthcare services contract with the State, Oregon's contested case proceedings meet and exceed the requirements of federal due process, OHA's audit regulations also meet and exceed constitutional requirements, and Willamette Family's claims are unripe. The law on each of these issues is clear and Willamette Family had no reasonable basis for bringing this complaint.

Instead, it appears that Willamette Family brought this suit to disrupt the agency's audit process in the face of a significant reimbursement obligation caused by Willamette Family's own poor documentation practices. Willamette Family filed this complaint the day before a scheduled status conference to set hearing dates in the contested case proceeding. That same day, Willamette Family emailed the administrative law judge a copy of the complaint, objected to "scheduling a contested case hearing at this point," and urged the administrative law judge to "defer to the Federal Court who now has jurisdiction over this matter." (Jindal Decl. Ex. 9) The administrative law judge denied Willamette Family's request (Jindal Decl. Ex. 8), but this Court should not encourage litigants to file frivolous federal complaints designed to delay and obstruct lawful state enforcement proceedings. Instead, this Court should award defendants their attorney's fees to compensate Oregon taxpayers for the cost of defending this unfounded lawsuit.

## CONCLUSION

This Court should grant defendants' motion to dismiss and award defendants their reasonable attorney's fees.

DATED this 11th day of October, 2022.

MARKOWITZ HERBOLD PC

By:    *s/ Anit Jindal*
David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

## CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2)

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 9,898 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 11th day of October, 2022.

*s/ Anit Jindal*
Anit Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
*Special Assistant Attorneys General for*
*Defendants*

1328574