**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**Heath L. Hyatt**, *pro hac vice*
HHyatt@perkinscoie.com
**Steven Sun Beale**, *pro hac vice*
sbeale@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

**Greg Lynch**, OSB No. 752340
GLynch@lynchmurphy.com
**Jill Gibson**, OSB No. 973581
JGibson@lynchmurphy.com
LYNCH MURPHY MCLANE LLP
1000 SW Disk Drive,
Bend, OR 97702
Telephone: 541.383.5857

*Attorneys for Plaintiff Willamette Family, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **WILLAMETTE FAMILY, INC.**, an Oregon non-profit corporation, | No. 6:22-cv-00978-AA |
| Plaintiff, | **PLAINTIFF WILLAMETTE FAMILY, INC.'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, EXPEDITED DISCOVERY** |
| v. | |
| **PATRICK ALLEN**, in his official capacity, **DAVID BADEN**, in his official capacity, and **FRITZ JENKINS**, in his official capacity, | **Oral Argument Requested** |
| Defendants. | |

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

159169384.6

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# TABLE OF CONTENTS

Page

I.      INTRODUCTION...................................................................................................1

II.     ARGUMENT........................................................................................................2

        A.    Defendants' Mudslinging Is an Unfortunate Diversionary Tactic That Is
              Beneath the Government Agency That They Represent.....................................2

        B.    Willamette Family Is Likely to Succeed On the Merits of Its Claims.................3

              1.    Defendants' Belated Efforts to Salvage Their *Younger* Abstention
                    Arguments Are Unavailing....................................................................3

              2.    Willamette Family Has Due Process Rights in Payments Received
                    Years Ago for Services Performed.........................................................8

              3.    OHA Is Deliberately Denying Willamette Family a Meaningful
                    Opportunity to Respond to the Audits That Are in Violation of the
                    Procedural Due Process Clause. ..........................................................10

              4.    Willamette Family Is Likely to Succeed on Its Void for Vagueness
                    Claim. ...............................................................................................12

        C.    Willamette Family Faces Irreparable Harm.....................................................13

        D.    The Balance of Equities and the Public Interest Favors Willamette Family.......15

        E.    Defendants Continue to Withhold the Underlying Audit Data.........................16

        F.    Willamette Family Shows Good Cause for Expedited Discovery. ....................18

III.    CONCLUSION..................................................................................................18

**Perkins Coie LLP**
1120 N.W.  Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

159169384.6

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985) ........................................................................ 14

*Applied Underwriters, Inc. v. Lara*,
37 F.4th 579 (9th Cir. 2022) ............................................................................. 4

*ASSE Int'l, Inc. v. Kerry*,
803 F.3d 1059 (9th Cir. 2015) ........................................................................ 15

*Carnation Co. v. Sec'y of Lab.*,
641 F.2d 801 (9th Cir. 1981) .......................................................................... 12

*City of Los Angeles v. David*,
538 U.S. 715 (2003) .......................................................................................... 9

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......................................................................................... 4

*Cook v. Harding*,
879 F.3d 1035 (9th Cir. 2018) .......................................................................... 5

*Delta Dental Plan of Cal., Inc. v. Mendoza*,
139 F.3d 1289 (9th Cir. 1998) ....................................................................... 5, 6

*Educ. Networks of Am., Inc. v. Wasden*,
No. 1:16-CV-00379-BLW, 2017 WL 411206 (D. Idaho Jan. 30, 2017) .............. 9

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) .......................................................................... 16

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ........................................................................ 13

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) .......................................................................................... 4

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
762 F.2d 1374 (9th Cir. 1985) ........................................................................ 16

*Patel v. City of Long Beach*,
827 F. App'x 681 (9th Cir. 2020) (unpublished) ............................................... 9

*Pirie v. Chicago Title & Trust Co.*,
182 U.S. 438 (1901) .......................................................................................... 9

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
   754 F.3d 754 (9th Cir. 2014) ................................................................ 5

*San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cty.*,
   825 F.2d 1404 (9th Cir. 1987) .......................................................... 8, 9

*Spence v. State of Wash.*,
   418 U.S. 405 (1974) ........................................................................ 13

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013) ............................................................... 4, 5, 6, 15

*Trainor v. Hernandez*,
   431 U.S. 434 (1977) .......................................................................... 5

**STATUTES**

ORS 165.192 ..................................................................................... 6, 7

ORS 183.482(7) ................................................................................... 15

ORS 183.482(8)(c) ............................................................................... 15

**REGULATIONS**

OAR 410-120-150(7) .............................................................................. 7

OAR 410-120-150(9) .............................................................................. 7

OAR 410-120-1396(a) ............................................................................. 7

OAR 410-120-1397(1) ............................................................................. 8

# I.    INTRODUCTION

Without any remaining option, Willamette Family filed suit to defend itself against OHA's audits that threaten its livelihood. Willamette Family simply seeks the most basic due process—the ability to understand how OHA conducted its audits, why those audits resulted in findings of millions in overpayments, and why OHA seeks to recoup the full amounts paid when the only allegation is improper billing documentation. And Defendants, for whatever reason, continue to refuse to provide it. Instead, as in their prior briefing, Defendants' Response continues to try to divert the Court's attention by recharacterizing Willamette Family's claims, overstating authority, ignoring controlling precedent, and disregarding the importance of Willamette Family to its community's efforts to deal with unprecedented behavioral health and substance abuse crises in Oregon. In a telling sign of increasing uneasiness about their claims, Defendants ramp up the rhetoric even further by repeatedly attempting to dismiss key issues in this case—the services provided by Willamette Family and the bases for the auditors' determinations—as "immaterial" and "irrelevant"; adding increasingly hyperbolic claims that this single case and its unique facts will somehow unleash an uncontrollable flood of litigation; and topping it off with an unfortunate attempt to smear Willamette Family's good name. Defendants' aggressive tactics belie their repeated assertions that this case is frivolous and demonstrate why it is meritorious.

Defendants have now filed five briefs with this Court. Despite their repeated diversionary antics, they have not and cannot dispute the following key facts:

- The United States and Oregon are in the grips of brutal and unrelenting behavioral health and substance use disorder epidemics, and Oregon and Lane County are in desperate need of services to address these needs.

- Willamette Family is, and has been for many years, a critical provider of services for Lane County Oregonians affected by these epidemics.

- The audits at issue concern only alleged billing imperfections, and there is no accusation or hint of fraud.

1-

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

**Perkins Coie LLP**
1120 N.W.  Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

- Willamette Family provided the services at issue in the audits, and there is no contention about the quality of the services.

- The six audits threaten Willamette Family's very existence and risk ripping a gaping hole in the already-frayed safety net in Lane County.

- Internal OHA documents indicate that the outcome of the audits was a foregone conclusion, and that OHA will seek payment of more than $10 million from Willamette Family.

- The audits and recoupment turn on auditors' determinations about compliance with regulations for which the auditors were provided no direction.

- The audits and recoupment also turn on auditors' guidance-free determinations whether an alleged billing imperfection constituted an administrative or financial error, and the auditor charged with making that determination was unable to define either type of error.

- OHA has not provided Willamette Family with information about how the auditors exercise their considerable discretion to make these decisions.

- OHA has not provided Willamette Family with the data or materials necessary to evaluate whether the audit sampling or extrapolation methodology were consistent with generally accepted statistical principles.

These facts make it clear that Defendants will not provide the process necessary for Willamette Family to have the opportunity to meaningfully defend itself, and that this Court's intervention is necessary.

## II. ARGUMENT[1]

### A. Defendants' Mudslinging is an Unfortunate Diversionary Tactic that is Beneath the Government Agency that They Represent.

In perhaps the most telling sign of disquiet about the merits of their position, Defendants begin their brief by trying to divert the Court's attention with an inexcusable attempt to smear

---

[1] In their response to Willamette Family's request for preliminary injunction, Defendants fully incorporated their motion to dismiss and supporting reply brief. *See* Dkt. 44 at ECF 14. Defendants' response to the preliminary injunction also contains substantive arguments related to their motion to dismiss. For these reasons, Willamette Family responds to various arguments Defendants make in both their response to the preliminary injunction and their reply in support of their motion to dismiss. In order to be concise, and in light of the extensive briefing already before this Court, Willamette Family responds only to Defendants' most egregious

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

159169384.6

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

Willamette Family by mischaracterizing irrelevant actions by two rogue employees—conduct that Willamette Family uncovered, corrected, and reported—and attributing it to Willamette Family. *See* Defendants' Response to Motion for Preliminary Injunction (Dkt. 44, "Response") at ECF 8.[2] Any doubt about whether this is a diversionary tactic meant only to smear Willamette Family is laid to rest by the fact that, despite leading with this discussion, Defendants *never mention it again in the rest of their brief.*

Several years ago, Willamette Family caught two employees deliberately sabotaging its billing and coding protocols. Willamette Family immediately fired those involved, fixed the issue, disclosed it, and repaid funds associated with the issue. That disclosure led to a corrective action plan that pre-dated the audits at issue here.

Defendants, of course, fail to mention any of that context. But even *if* Defendants provided some context, raising the issue now is mere misdirection. Defendants do not even contend—let alone try to establish—that the misdeeds of two Willamette Family employees have anything to do with the audits at issue here. Such misguided mudslinging should be beneath the director and high-level executives at one of Oregon's largest agencies.

### B.    Willamette Family is Likely to Succeed on the Merits of Its Claims.

Willamette Family is likely to succeed on the merits of its procedural due process claims and its void for vagueness claims. Defendants' arguments, including their misapplication of *Younger*, offer them no protection.

### 1.    Defendants' Belated Efforts to Salvage Their *Younger* Abstention Arguments are Unavailing.

Remarkably, despite briefing the issue multiple times, Defendants still fail to address controlling precedent that fatally undermines their abstention argument and instead continue to rely on outdated case law to try make their case. Since at least 2013, it has been clear that

---

misstatements and flawed arguments. Willamette Family does not waive any arguments raised in its earlier briefing.

[2] All citations to Defendants' briefs are to the ECF page number.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

*Younger* abstention applies only in "exceptional" cases, and that the "general rule" is that "the pendency of an action in a state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (simplified). Also clear for the last decade is the rule that, where a civil enforcement proceeding is at issue, *Younger* applies *only* if the proceeding is "quasi-criminal" in nature. *Id.* at 593. Defendants continue to ignore these standards, focusing instead on outdated cases decided under a different standard that are based on entirely distinguishable circumstances.

Defendants compound their failure to acknowledge binding precedent by mischaracterizing their prior filings. In their Reply in Support of their Motion to Dismiss (Dkt. 41, "Reply"), Defendants finally acknowledge that *Younger* abstention only applies to 'quasi-criminal' proceedings. But even then, Defendants claim that they "explained" that in their Motion to Dismiss. Dkt. 41 at ECF 3. Defendants are doubly wrong.

First, *nowhere* in Defendants' Motion to Dismiss (Dkt. 19) do they mention the *requirement* that a civil enforcement proceeding be quasi-criminal in nature. Indeed, Defendants' contention in their Reply contains no citation to their Motion to Dismiss brief for good reason: they never "explained" anything of the sort.

Second, Defendants try to downplay the importance of the quasi-criminal requirement by inaccurately suggesting merely that "some cases" refer to this requirement. Dkt. 41 at ECF 3. Not so. Nearly a decade ago, the Supreme Court expressly cabined *Younger* abstention to civil enforcement proceedings that are quasi-criminal. *See Sprint*, 571 U.S. at 81. And the Ninth Circuit has repeatedly applied this standard in recent years. *See* Dkt. 31 at ECF 20 n.5 (collecting recent cases). Indeed, just a few months ago, the Ninth Circuit reiterated that "[t]he hallmark of the civil enforcement proceeding category for *Younger* purposes is that such proceedings are 'akin to a criminal prosecution' in 'important respects.'" *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 588 (9th Cir. 2022) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). Defendants' efforts to downplay binding precedent from the U.S. Supreme Court

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

and the Ninth Circuit betray the weakness in their argument: since they cannot credibly argue that OHA's administrative audit of purported billing imperfections is quasi-criminal, Defendants pretend that the mandatory prerequisite to *Younger* abstention is optional.[3]

Rather than address the law as it currently stands, Defendants continue to rely on outdated precedent, defying the Ninth Circuit's repeated admonition that the Supreme Court's ruling in *Sprint* clarified and narrowed the scope of *Younger* abstention.[4] Defendants hang their hat—again—on *Trainor v. Hernandez*, 431 U.S. 434 (1977), but *Trainor* predates *Sprint* by 35 years and addressed alleged *criminal* conduct under Illinois law—"fraudulently conceal[ing] assets while applying for and receiving public assistance." *Id.* at 435. The proceeding in *Trainor*, to recover welfare payments obtained *by fraud*, bears an obvious relation to a criminal proceeding: it dealt with criminal conduct by fraudsters cheating a welfare program. Here, by contrast, there are no allegations of fraud, no allegations of overbilling, and no allegations of intentional wrongdoing of any kind. Indeed, Mr. Jenkins admitted to Willamette Family that if OHA suspected fraud, he would not be handling the audits; a different specialized team would handle the case. Dkt. 27 (Williams Decl.) ¶ 16. OHA does not accuse Willamette Family of failing to provide services or of providing subpar services. Instead, OHA merely accuses Willamette Family of improper documentation.

Defendants' reliance on *Delta Dental Plan of Cal., Inc. v. Mendoza*, 139 F.3d 1289, 1295 (9th Cir. 1998) is similarly flawed. *Delta Dental* was published over a decade before *Sprint* and included no analysis of the quasi-criminal requirement. Indeed, for this reason, the Ninth Circuit—in another decision conveniently overlooked by Defendants—noted that *Sprint*

---

[3] Defendants' newfound acknowledgement of the quasi-criminal requirement also conflicts with their Motion to Dismiss. There, Defendants took pains to distinguish OHA's administrative proceeding from a criminal prosecution. *See* Dkt. 19 at ECF 24. Defendants, though, now try to have it both ways: arguing on the one hand that OHA's audits are akin to criminal proceedings while on the other hand arguing that OHA's audits are far removed from criminal proceedings.

[4] *See Cook v. Harding*, 879 F.3d 1035, 1039 (9th Cir. 2018) (noting that "[a]fter more than forty years of unchecked doctrinal expansion, the Supreme Court changed course" in *Sprint*; *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014)) (describing how "*Sprint* resolved . . . interpretive dilemmas" regarding *Younger* abstention).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

narrowed *Delta Dental*. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758–59 (9th Cir. 2014). *Delta Dental*, therefore, does not speak to the critical *Younger* issue before this Court: whether OHA's proceedings against Willamette Family are akin to criminal proceedings.

When Defendants do attempt to argue that this administrative audit is so akin, their contentions fall flat. Defendants' position, essentially, is that every administrative audit of an entity that received government payments is "akin to a criminal proceeding" because it could in theory uncover wrongdoing, even where it does not. Dkt. 41 at ECF 4–5. That expansive interpretation is "irreconcilable with [the Supreme Court's] dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Sprint*, 571 U.S. at 81–82.[5]

OHA's argument is essentially that *Younger* applies because an OHA audit *could potentially* uncover fraud. But that's not the law. Indeed, it proves why *Younger* does not apply here: there is no allegation of fraud. And, by Mr. Jenkins' own admission, *if* OHA had discovered fraud, OHA would have referred the matter to the Oregon Department of Justice's Medicaid Fraud Control Unit (MFCU). Dkt. 27 (Williams Decl.) ¶ 16. The MFCU, in turn, would have initiated its own investigation, which might have then led to an entirely different administrative proceeding. And that proceeding might well be one where *Younger* abstention applies. But *this* proceeding is an administrative audit by OHA, the MFCU is not involved, and the only findings relate to alleged imperfections in notetaking, a far cry from fraud or any other criminal conduct. Defendants never allege that the MFCU has had any involvement in the OHA audits at issue. Further undermining Defendants' argument, they never allege that Willamette Family had any criminal *mens rea* or committed any alleged error graver than a good faith billing imperfection. *See* ORS 165.192 (requiring a defendant "[k]nowingly makes or causes to be

---

[5] Notably, in a different section of their brief, Defendants undermine their *Younger* argument by contending that the regulations Willamette Family challenges as void for vagueness are economic regulations subject to a lower standard than criminal or penal regulations. *See* Dkt. 41 at ECF 15; Dkt. 44 at ECF 16.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

159169384.6

made a claim" containing a false statement or "[k]nowingly conceals from or fails to disclose" information permitting a false payment). OHA's audits are far removed from a criminal prosecution.

Instead, Defendants fall back on the authorizing regulations for OHA's auditing process, scouring them for any mention of "fraud" (while conveniently overlooking the criminal healthcare fraud statute). *Id.* Defendants are able to find three scattered references to fraud and appear to hope that if their briefing includes the word "fraud" enough times, that will somehow transform OHA's audits of Willamette Family into investigations aimed at undercovering fraud. Defendants' attempted obfuscation illustrates just how big of a leap Defendants ask this Court to take in transforming OHA's audits of Willamette Family from a simple administrative audit into an enforcement action akin to a criminal proceeding.

First, Defendants selectively refer to only a small portion of a regulation to claim that "[t]he statutory purpose of OHA's audits is to investigate and respond to instances of 'fraud, waste, and abuse' by healthcare providers." Dkt. 41 at ECF 5 (citing OAR 410-120-1396(a)). Defendants conveniently omit almost the entire regulation and mention only four words. The entire provision, though, makes clear that preventing "waste, fraud, and abuse," is only part of the third of three purposes of the regulatory provision.[6] The other two purposes—"ensur[ing] proper payments were made based on requirements applicable to covered services, [and] ensur[ing] program integrity of the Authority or DHS programs and services"—bear only the most tenuous connection to preventing fraud. OAR 410-120-1396(a). Defendants do not even try to argue otherwise. And the third portion of the provision, which Defendants only partially cite, actually states in full that one aim of the audits is "to recover overpayments and discover

---

[6] In full, the provision states that: "Audit rules and procedures ensure proper payments were made based on requirements applicable to covered services, ensure program integrity of the Authority or DHS programs and services as outlined in Oregon Administrative Rules (OARs) 407-120-0310, 943-120-1505, 410-120-1160, OAR Ch 410 sections applicable to specific services, and establish authority for the Authority Office of Program Integrity (OPI) to recover overpayments and discover possible instances of fraud, waste, and abuse in the Medicaid member program." OAR 410-120-1396(a).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

possible instances of fraud, waste, and abuse in the Medicaid member program." *Id.* Defendants' argument that OHA is seeking out fraud is entirely divorced from the record. And the authorizing regulation that Defendants rely on makes clear that most OHA audits, including this one, have nothing to do with fraud.

Second, Defendants cite to OAR 410-120-150(7) and (9) for the unremarkable proposition that instances of fraud and abuse can be referred to other agencies for potential prosecution. *See* Dkt. 41 at ECF 5. This is another red herring: again, Defendants do not even suggest that OHA is referring or has referred Willamette Family for potential prosecution. Indeed, this regulation proves the point: *if* Willamette Family had been so referred, and some other agency (e.g., the MFCU) were prosecuting Willamette Family for fraudulent conduct, *then* abstention *in that case* might well be warranted. But the mere possibility that OHA's audit *could have* resulted in a quasi-criminal proceeding does nothing to transform this administrative audit into something akin to a criminal action.

Third, Defendants cite to OAR 410-120-1397(1) to show that Willamette Family is required to certify that its claims information is accurate and that the concealment of material information may be prosecuted. *See* Dkt. 41 at ECF 5. But this standard language—included on innumerable contracts and forms—also does nothing to further Defendants' argument. It provides no evidence that that OHA's actions against Willamette Family were aimed at combating waste, fraud, or abuse, nor does it show that OHA's audits are otherwise akin to criminal proceedings.

Simply put, Defendants cannot show how a set of audits related to allegedly improper billing notes is akin to a criminal proceeding. *Younger* abstention is not warranted.

### 2. Willamette Family has Due Process Rights in Payments Received Years Ago for Services Performed.

Defendants continue to mischaracterize Willamette Family's protected interest here as merely a right to perform under an ongoing contract, when the real interest at issue is the right to retain money earned long ago. Defendants overlook that money earned is a protected interest,

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

distinct from contracts or entitlements, and ignore that the relevant contracts here were fully performed years ago.

Defendants' reliance on *San Bernardino* is, again, misplaced. The "critical issue" in that case was whether the "*rights to performance on the contracts*, as a supplier of services to the government, were sufficient property interests to merit constitutional protection." *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cty.*, 825 F.2d 1404, 1407 (9th Cir. 1987) (emphasis added). Now, Defendants attempt to extend that holding to include *all money received* as the result of a service contract. *See* Dkt. 41 at ECF 9. But that is not what the *San Bernadino* court held, and the Court should not adopt this novel interpretation. OHA is not seeking to terminate a contract with Willamette Family, and Willamette Family is not bringing this claim over a claimed right to performance of an ongoing contract.

The sole case that Defendants cite to support their version of *San Bernardino* is entirely inapplicable because it involved funds "illegally conveyed pursuant to a void contract." *Educ. Networks of Am., Inc. v. Wasden*, No. 1:16-CV-00379-BLW, 2017 WL 411206 (D. Idaho Jan. 30, 2017). There, a telecommunications provider was ordered to repay funds received under a "tainted contract" that the Idaho Supreme Court had declared "void *ab initio*." *Id.* at *1. The court noted that there was no difference between money "which the state illegally conveyed pursuant to a void contract" and money yet to be paid, so the funds received did not constitute a constitutionally protected contract interest. *Id.* at *7. Here, in contrast, there is no contention that the contracts between OHA and Willamette Family are void; indeed, Defendants cannot dispute that the contracts were valid, the services under the contract were rendered, and the funds are currently and "lawfully possessed" by Willamette Family. *See id.* (distinguishing between illegal payments under a void contract and "funds otherwise lawfully possessed").

It is undisputed that at issue here are payments Willamette Family received for services provided years ago under a valid and fulfilled contract. A state cannot deprive a person of property without due process of law, "[m]oney is certainly property," *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 443 (1901), and it is a private interest due constitutional protection. *See*

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

*City of Los Angeles v. David*, 538 U.S. 715 (2003) (naming an "individual's interest in maintaining the use of money" as a private interest for procedural due process purposes); *see also Patel v. City of Long Beach*, 827 F. App'x 681, 684 (9th Cir. 2020) (unpublished) (stating that the "private interest at stake" in a due process claim was a "loss of money.").

### 3. OHA is Deliberately Denying Willamette Family a Meaningful Opportunity to Respond to the Audits that are in Violation of the Procedural Due Process Clause.

OHA's multi-million-dollar recoupment is based entirely on a series of audits, yet Defendants have still not provided Willamette Family with necessary details about two key elements of those audits that are critical to Willamette Family's defense: the statistical methodology employed and the auditors' decisions. Defendants do not deny that they continue to withhold this information. Rather, they vaguely claim to have provided "full document discovery," including "audit data and other records." Dkt. 44 at ECF 15. However, it is undisputed that Defendants failed to provide the evidence needed for validating their sampling and extrapolation procedures. Dkt. 28 (Cohen Decl.) at ¶ 8. And it is undisputed that OHA denied, and continues to deny, Willamette Family the ability to talk to auditors and other key decisionmakers responsible for the underlying determinations contained in the audit. Dkt. 11 at ECF 27–28. Those two factors—statistical efficacy and unfettered discretion by key OHA officials—are the foundation upon which the entire agency action rests.

Defendants have not provided the information necessary for Willamette Family to scrutinize the auditors' statistical methodology. Rather, as Willamette Family's expert witness explains, the information Defendants have provided—"Excel worksheet[s] documenting the sampling and extrapolation process," Dkt. 41 at EFC 14; Dkt. 20–9—is insufficient to fully test the statistical veracity of the audit process. Dkt. 28 at ¶ 8. Defendants do not meaningfully dispute the expert witness's claims of the inadequacy of the data produced, but instead submit a declaration from their attorney—not a statistician—claiming that OHA has provided "all existing data related to the sampling and extrapolation process." Dkt. 45 (Poe Decl.) at ¶ 8. If OHA has indeed produced all "existing" data, then either there never was sufficient data to analyze the

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

propriety of the statistical methodology—a defect that would render the audits improper—or OHA destroyed the data. Willamette Family should have the opportunity to learn which scenario it is —yet another reason depositions are warranted.

Nor do Defendants dispute the nature of the immense, unguided discretion granted to the auditors. Mr. Jenkins admitted that three different auditors could come to three different results. The original auditor, Deborah Larkins, admitted that she could not define or determine when a purported documentation error was financial or administrative. Dkt. 27 (Williams Decl.) ¶ 17. OHA's own Office of Program Integrity acknowledged that the rules "lack the clarity needed to develop audit findings in cases where potential improper payments were made to providers." Dkt. 29-14 (Oregon Secretary of State report) at ECF 28.

Defendants are unwilling (or unable) to provide Willamette Family with a standard or policy that guides the discretionary actions of its auditors. Instead, Defendants pretend that Willamette Family, with access to "its own billing and clinical records," Dkt. 44 at ECF 15, and "bill-by-bill notice of the charges against it," Dkt. 41 at ECF 13, can peek into the minds of the auditors who categorized every error as financial rather than administrative. Willamette Family provide sexcellent mental health and substance abuse care, but it cannot read auditors' minds.

In fact, OHA does not deny that the evidence indicates that the audit results were likely a preordained outcome rather than a measured and analytical process. An internal email shows that one month before the audits even began, OHA calculated estimated overpayments for the time period subject to the audit. *See* Dkt. 29-09. That estimated amount matches almost exactly the $10.4 million OHA is now seeking to levy from Willamette Family. Strikingly, for one of the largest audits, the overpayment amount that Ms. Larkins later found matched the amount calculated a month before she was even assigned to begin her audits—*down to the penny*. This is precisely what Willamette Family should have the opportunity to probe in a deposition. Defendants have no answer for this issue. Instead, in a footnote, they attempt to paint the email as "innocuous" and feign ignorance as to why Willamette Family might be "concern[ed]" about a document indicating that the results of the audits were determined *before* they started. Dkt. 41 at

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

ECF 9 n.3. But Defendants do not deny that the OHA's internal correspondence put a target on Willamette Family before the audit process began, that two of the three completed audits hit that target—the latter, down to the penny—or that there is every reason to believe the latter three will as well.

Due process requires heightened procedures beyond those provided by OHA. The due process clause—a flexible concept rather than a rigid checkbox—requires protections to be tailored to a particular situation in order to prevent erroneous deprivation. In agency actions, due process affords parties the ability to rebut relevant evidence presented against them. *Carnation Co. v. Sec'y of Lab.*, 641 F.2d 801, 803 (9th Cir. 1981). Without access to the critical information regarding the audits, and with no assurances that such information will be provided in the future, Willamette Family will be unable to meaningfully rebut OHA's accusations. It's cold comfort that Willamette Family might be able to raise these critical questions in the contested case hearing because any adjudication based on this limited record presents an undue risk of erroneous deprivation. Besides, any attempt to challenge the audits themselves are likely to be met by OHA's established pattern of evasion: there is every reason to believe that OHA will continue to brush aside valid requests for statistically relevant information and continue to deny access to key decisionmakers, and, at bottom, continue to rely on the flawed audit results to erroneously deprive Willamette Family of its property interests.

> ### 4. Willamette Family is Likely to Succeed on Its Void for Vagueness Claim.

The three policies and regulations that Willamette Family challenges are void for vagueness. Defendants' response appears to misunderstand Willamette Family's claim. Contrary to Defendants' contentions, Willamette Family's claim is not about prosecutorial discretion. Dkt. 44 at ECF 16. Setting aside the first obvious flaw in the analogy—auditors are not prosecutors and are not imbued with prosecutorial authority, a prerequisite to prosecutorial discretion—the issue is the utter lack of *any regulations or guidance* to help OHA auditors *use their ample discretion* in deciding whether an error is financial (and thus recoverable) or

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

administrative. As Mr. Jenkins admits, this failure of any guidance could lead to three different auditors getting three different results. Dkt. 27 (Williams Decl.) at ¶ 16. And as Ms. Larkins admits, she could not *even define* "financial error" or "administrative error." *Id.* at ¶ 17. That's not mere "discretion"—that's an utter failure by Defendants to create a clear set of rules that everyone, providers and auditors, understand and apply. Further, the only "binding precedent" that Defendants cite is a footnote in an entirely distinguishable case addressing a statute the Court noted was "quite mechanical," *see Spence v. State of Wash.*, 418 U.S. 405, 414 n.9 (1974), a far cry from the relevant regulations here.

Defendants also take issue with Willamette Family's inclusion of three examples where OHA auditors inexplicably found—and, apparently, maintain to this day—that Willamette Family violated the two challenged regulations. Dkt. 44 at ECF 17. Of course, those were mere examples illustrating the problems with the audit and the application of the regulations—they were not meant to make up the entire universe of claims. But it's telling that Defendants appear to admit that these three examples comply with the regulations by any reasonable interpretation, yet they *are still pursuing recoupment of the payments for the associated services.*

### C. Willamette Family Faces Irreparable Harm.

Defendants threaten $10.4 million in recoupment from Willamette Family. Defendants' attempt to downplay the harm to Willamette Family lacks merit.

First, Defendants argue that the $10.4 million figure "does not come from official OHA correspondence." Dkt. 44 at ECF 19–20. But that's demonstrably wrong. Ms. Larkins, OHA's official auditor, presented that figure to Willamette Family as the amount of recoupment at issue. *See* Dkt. 29-1 (spreadsheet "Prepared by: Deborah L. Larkins."). And Willamette Family has good reason to believe that Defendants will seek all or nearly all of that amount at issue. After all, Defendants are already seeking 99% and 100% of the amount at issue in Audits Two and Three, respectively, and there is no indication that they will not seek 100% of the amounts at issue in the other audits. It is undisputed that such a staggering recoupment would force Willamette Family out of business. "The threat of being driven out of business is sufficient to

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

159169384.6

establish irreparable harm." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) ("[S]howing a threat of 'extinction' is enough to establish irreparable harm, even when damages may be available and the amount of direct financial harm is ascertainable." (quoting *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985))).

It's also ironic that Defendants argue that Willamette Family will not be irreparably harmed because the hearing directly addresses only two audits that account for relatively small amounts after Defendants guaranteed that outcome. Willamette Family sought to consolidate all audits into a single proceeding, for many reasons, but OHA objected. Despite agreeing with Willamette Family's arguments and discrediting many of OHA's arguments, the Administrative Law Judge denied Willamette Family's request solely because OHA opposed it. Dkt. 29-20 (Order denying motion to consolidate) at 3–4. Defendants cannot now argue that Willamette Family has no claim *here* after ensuring the audits would not be consolidated. Moreover, Defendants began Audits Four through Six on the same days as Audits One through Three, nearly *five years ago*. It's evident that Defendants' strategy is to hold these largest audits over Willamette Family, threatening them into submission while also pursuing the two smaller audits to validate the deficient process afforded to Willamette Family by Defendants, locking it in for the subsequent, more substantial recoupment audits. Such a strategy is constitutionally dubious and particularly inappropriate when the government is auditing a critical healthcare provider.

Defendants' attempt to portray Willamette Family as flush with cash is also misleading. Defendants point to a report indicating that Willamette Family had $5.5 million in cash 16 months ago, but Defendants present no current information and fail to consider any restrictions on Willamette Family's funds, liabilities, or operating costs. Dkt. 44 at ECF 19; Dkt. 46-4. In any event, even assuming, *arguendo*, that Willamette Family had $5.5 million in unrestricted cash and no liabilities, that would be barely more than half of what OHA seeks in repayments. There is no genuine dispute that even a small recoupment of payment for services rendered will force Willamette Family to reduce its services or that a recoupment of more than $10 million would force Willamette Family to close its doors for good. Dkt. 27 (Williams Decl.) at ¶ 11.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

Contrary to Defendants' assertions, Willamette Family does not have other adequate remedies available. It's not as easy as Defendants suggest to simply "file a motion" to obtain the relief that Willamette Family seeks in the administrative proceeding. Dkt. 44 at ECF 21. The deck is already stacked against Willamette Family, given the deference given to OHA in the hearing process, as demonstrated by Willamette Family's motion to consolidate the audits into a single proceeding. As discussed above, the Administrative Law Judge was compelled to deny Willamette Family's meritorious request simply because OHA objected. Dkt. 29-20 at ECF 3–4.

Similar limitations apply to the purported appellate rights that Defendants offer as an alternative. Willamette Family's appeal rights are limited to Oregon state courts, not federal court, and those state court rights are extremely limited. Any appellate review is confined to the hearing record. ORS 183.482(7). Appellate courts are highly deferential to the administrative findings. They do not review decisions de novo. *See id.* ("[T]he court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion."); ORS 183.482(8)(c) (standard of review is for substantial evidence). This is precisely why providing a meaningful hearing at the outset is so important—and required by the Constitution.

### D.    The Balance of Equities and the Public Interest Favors Willamette Family.

Defendants barely even mention the mental health and substance abuse crisis in Oregon or Lane County anywhere in its opposition. That's telling. Instead, Defendants focus their attention on the theoretical effects of a decision in Willamette Family's favor on Oregon's administrative law and court system. Dkt. 44 at ECF 22–23. But Defendants' fears are both overblown and unsupported by anything other than hyperbolic attorney argument. For example, there was no rush to federal court after the Ninth Circuit ruling that the United States Department of State must allow the plaintiff to rebut the evidence that the Department used against it. *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1079 (9th Cir. 2015). That ruling did not cripple the administrative state as Defendants suggest would occur if they were forced to explain their audit methodology. Defendants have also cited no evidence of any of the catastrophic consequences they portend coming to fruition after the Supreme Court cabined *Younger* abstention in *Sprint*.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

In aid of their parades of horribles, Defendants try to recharacterize Willamette Family's claim as one that is trying to ban any kind of discretion in enforcement actions. Dkt. 44 at ECF 22–23. That's not so. Willamette Family challenges three specific policies and regulations, not the doctrine of prosecutorial discretion.

Finally, Defendants are wrong to suggest that Willamette Family delayed filing this lawsuit or this motion for preliminary injunction. *Id.* at 24. Just the opposite. Willamette Family filed its lawsuit when it became clear that Defendants and the Administrative Law Judge were intent on moving forward with a hearing process that would deny Willamette Family its constitutional rights, over Willamette Family's continuous objections. Willamette Family also filed its motion for preliminary injunction months ahead of the administrative hearing to allow for full briefing in a non-expedited manner, even giving Defendants an extension to respond to the motion. Dkt. 40. The two cases cited by Defendants are no help to their argument. In *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015), the Plaintiff brought a temporary restraining order citing immediate irreparable harm, not a motion for a preliminary injunction, and *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374 (9th Cir. 1985) does not actually say how long the moving party delayed before filing the motion, just that it was a "long delay."[7] Moreover, in both of those cases, the subject matter at issue, copyright and antitrust, are such that the purported harm grows with each passing day. That is not the case here.

### E. Defendants Continue to Withhold the Underlying Audit Data.

Without explanation or engaging with Willamette Family's assertions, Defendants contend that they have produced all documents responsive to Willamette Family's discovery requests. *See* Dkt. 45 (Poe Decl.) at ¶¶ 7–8. But neither Mr. Jenkins, nor any of the OHA

---

[7] Defendants' argument that Willamette Family's motion should be denied because the supporting brief lacks a separate section called "Motion," Response at 7, is yet another attempt to divert this Court from the substance. Defendants face no prejudice from the omission, as their briefing makes it readily apparent that they fully understand the relief that Willamette Family seeks. *See, e.g.*, Response at 3 ("Audits #1 and #2 are at issue in the contested case hearing that Willamette Family seeks to enjoin."); Response at 19 ("Here, Willamette Family requests expedited responses to expansive discovery requests and depositions . . . .").

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

Program Integrity Unit auditors assigned to Willamette Family's case, nor a retained expert present that conclusion to the Court. Instead, Defendants rely on the declaration of the *attorney* who oversaw the production of documents in the administrative proceeding. *Id.* To Willamette Family's knowledge, Ms. Poe is not an auditor, she's not a statistician, and she's not an employee within the OHA Program Integrity Unit. The number of pages produced by OHA and the fact that they produced *some* data makes no difference. Without the information that Willamette Family seeks, it cannot replicate or validate the work done by OHA and, if the hearing is allowed to proceed, Willamette Family may never be given a legitimate chance to refute the veracity of the underlying audit methodology or its implementation.

Defendants also mischaracterize the conclusions reached by Willamette Family's statistical expert, Mr. Frank Cohen. Mr. Cohen, a statistical expert with a specialized focus in health care, concluded that OHA failed to provide sufficient information to evaluate and validate OHA's audit methodology. Dkt. 28 (Cohen Decl.) at ¶¶ 36, 48–51. Specifically, Mr. Cohen concluded that Defendants: (1) failed to produce much of the sampling methods requested; (2) failed to properly construct the sample frame in such a way as to allow for replication; (3) failed to produce the parameters they used in conjunction with the Calvin paper to properly calculate sample sizes; (4) failed to properly assume the correct sample size; (5) failed to perform any statistical tests to ensure that the sample was representative of the universe; (6) failed to produce the seed value used for the random samples, which makes it impossible to replicate the sample pull; (7) failed to conduct a correlation analysis to ensure that the paid amounts used fairly and accurately approximated the overpaid amounts; (8) failed to provide any information, including final overpayment findings, that could be used to replicate and validate the extrapolation calculations; (9) failed to provide explanations as to how (or which) strata were included in the extrapolation; and (10) failed to explain whether (or how) they would have calculated the extrapolation with the inclusion or exclusion of the census stratum. *Id.* ¶¶ 36–47.

Mr. Cohen's conclusions are unrebutted. Defendants offer no declaration from a competing expert, Mr. Jenkins, Ms. Larkins, or any subsequent auditor.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

### F. Willamette Family Shows Good Cause for Expedited Discovery.

Given the potentially ruinous consequences for Willamette Family, it has simply requested the opportunity to understand how OHA's auditing decisions were actually made. The reason Willamette Family seeks expedited discovery is plain: if this Court does not enjoin the administrative hearing, the administrative hearing is set to go forward in January without Willamette Family knowing those key details. Defendants argue at length that the discovery requests are overbroad, but those are issues to be addressed in the first instance during conferral—something Defendants have not done. Defendants made many of the same overbreadth arguments in their unnecessary Motion to Stay Discovery. Dkt. 24. To not belabor Willamette Family's rebuttal to Defendants' arguments, Willamette Family incorporates the same points raised in its opposition. Dkt. 38 at 4–6.

## III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for a Preliminary Injunction should be granted, or in the alternative, the Court should order expedited discovery, including depositions, to be completed before the January 30, 2023, hearing commences.

*     *     *

18-     PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A
         PRELIMINARY INJUNCTION OR EXPEDITED DISCOVERY

159169384.6

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 6,470 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED:  November 28, 2022

**PERKINS COIE LLP**

By: _____
**Stephen F.  English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R.  Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
Telephone:  503.727.2000

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**Heath L.  Hyatt**, *pro hac vice*
HHyatt@perkinscoie.com
**Steven Sun Beale**, *pro hac vice*
sbeale@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000

**Greg Lynch**, OSB No. 752340
GLynch@lynchmurphy.com
**Jill Gibson**, OSB No. 973581
JGibson@lynchmurphy.com
LYNCH MURPHY MCLANE LLP
1000 SW Disk Drive
Bend, Oregon 97702
Telephone:  541.383-5857

*Attorneys for Plaintiff Willamette Family, Inc.*

**Perkins Coie LLP**
1120 N.W.  Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000