IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**WILLAMETTE FAMILY, INC.,**

              Plaintiff,

     v.

**PATRICK ALLEN; DAVID BADEN;**
and **FRITZ JENKINS** in their official
capacities,

              Defendants.

Civ. No. 6:22-cv-00978-AA

**OPINION AND ORDER**

_____

AIKEN, District Judge:

Willamette Family Inc. ("Plaintiff") brings this action under 42 U.S.C. § 1983 seeking declaratory judgment and injunctive relief, claiming deprivation of civil rights in contravention of the Due Process Clause of the Fourteenth Amendment. Plaintiff alleges that Oregon Health Authority ("OHA") audits violate its right to be meaningfully heard and that the audits are conducted according to Oregon Administrative Rules ("OAR[s]s") that are constitutionally void for vagueness. Before the Court is Defendants' Motion to Dismiss, Defendants' Motion for Stay of Discovery, and Plaintiff's Motion for Preliminary Injunction or in the alternative, for Expedited Discovery. For the reasons explained, Defendants' Motion to Dismiss, ECF No. 19, is GRANTED. Defendants' Motion to Stay Discovery, ECF No. 24, is DENIED as moot.

Plaintiff's Motion for Preliminary Injunction, ECF No. 26, is DENIED.

## BACKGROUND

### I. Parties

Plaintiff is an Oregon non-profit corporation providing last-resort services for critical substance abuse and mental health treatment in Eugene and Lane County for over 55 years. First Am. Compl. ("FAC") ¶ 6. The majority of Plaintiff's clients participate in public health programs the State of Oregon operates through OHA. *Id.* Depending on the client and the services provided, Plaintiff is reimbursed either directly by OHA through its Division of Medical Assistance Programs ("DMAP") or by the Coordinated Care Organization ("CCO") of which Plaintiff is a member. *Id.*

OHA is an agency of the State of Oregon responsible for administering Oregon's public health programs, including Medicaid, and reimbursing providers like Plaintiff for health services to its participants. *Id.* ¶ 7. Defendant Patrick Allen is the current director of OHA and is sued in his official capacity. *Id.* Defendant David Baden is OHA's Chief Financial Officer and oversees the Fiscal and Operations Division within OHA. FAC ¶ 8. Baden is sued in his official capacity as Chief Financial Officer of OHA. Defendant Fritz Jenkins is the Administrator of Program Integrity in the Fiscal and Operations Division at OHA. FAC ¶ 9. Plaintiff alleges that Jenkins oversaw the persons auditing Plaintiff and served as the primary point of contact at OHA for Plaintiff's appeals of the audits. Plaintiff contends that Jenkins has appeared on many occasions as OHA's representative during the administrative proceedings and played a key role making decisions for OHA on both the procedural

and substantive issues in dispute in this case. *Id*. The Court refers to those individually named collectively as "Defendants" and to "OHA" when referring generally to the agency action challenged in this lawsuit.

## II.    Mental Health Crisis in Oregon

Plaintiff alleges that the United States is experiencing an unprecedented behavioral health and substance abuse crisis which has been exacerbated by the Covid-19 pandemic. *Id*. ¶ 11. Between 1991 and 2011, the number of opioid prescriptions issued in the United States tripled, and as prescriptions increased, so did abuse and diversion. *Id*. ¶ 12.

In its FAC, Plaintiff maintains that a study by the National Institutes of Health found that between 2002 and 2012, the rates of nonmedical use of prescription opioids more than doubled from 1.8 percent to 4.1 percent of the United States adult population. As abuse and diversion of prescription opioids skyrocketed, so did heroin use. *Id*. Over that same period, 2002 and 2012, the number of people in the United States abusing heroin doubled—from 240,000 in 2002 to over 480,000 in 2012. *Id*. Four years later in 2016, more than two million Americans qualified for an opioid use disorder diagnosis. *Id*. In 2013, synthetic opioids such as fentanyl became much more common and largely replaced prescription drug abuse. In 2017, the age-adjusted rate of all drug overdose deaths in the United States was nearly 22 per 100,000. The following year, in 2018, deaths due to drug overdose were four times higher than in 1999, driven largely by the opioid crisis. *Id*. ¶ 14. By 2019, just before the COVID-19 pandemic, more than 20 million Americans over the age of 12 reported

having a substance use disorder, but only ten percent of those individuals reported receiving care. *Id.* ¶ 13.

Plaintiff further contends that alcohol abuse has also increased, alleging that between 2000 and 2016, alcohol-induced deaths claimed the lives of nearly half a million people in the United States. *Id.* ¶ 16. Moreover, before the COVID-19 pandemic, nearly 20 percent of U.S. adults (around 47 million people) reported having a mental illness. *Id.* Ten percent of adults reported symptoms of anxiety and/or depressive disorder. After the pandemic, more than one in ten adults reported starting or increasing the use of alcohol or drugs to cope with the pandemic and nearly one-third of people in the in the U.S. who drink alcohol have increased their consumption since the pandemic began. *Id.* ¶ 18. According to the Centers for Disease Control, more than 93,000 people died from drug overdoses in 2020, the highest number on record and a 29 percent increase from 2019. *Id.*

In Oregon, in 2017, Plaintiff states that "one in ten Oregonians suffered from a substance use disorder; seven percent suffered from alcohol use disorder; four percent suffered from illegal drug use disorder; and one percent suffered from pain reliever use disorder." *Id.* ¶ 20. In 2016 and 2017, an estimated 329,000 Oregonians needed treatment for substance use disorder. *Id.* ¶ 21. On March 27, 2018, Oregon Governor Kate Brown issued an Executive Order declaring alcohol and substance abuse addiction as a public health crisis in Oregon, stating that "addiction treatment and recovery support services are unfortunately beyond reach for many Oregonians in need[.]" *Id.* ¶ 22.

Plaintiff states that the 2020 National Survey of Drug Use and Health, conducted by the Substance Abuse and Mental Health Services Administration under the United States Department of Health and Human Services, found that Oregon ranked as the worst state for addiction, down from fourth worst the year before. *Id.* ¶ 25. Oregon ranked first for methamphetamine use, first for prescription drug abuse, second for marijuana use, seventh for cocaine use, and eleventh for heroin use. *Id.*

Plaintiff asserts that the 2020 National Survey of Drug Use and Health found that Oregon ranked as the worst state in the nation for access to substance abuse treatment, down from 47th in 2019. *Id.* ¶ 26. By some estimates, since the beginning of the COVID-19 pandemic, Oregon has lost 40 percent of its addiction treatment beds for adults and 60 percent of its beds for adolescents. *Id.* ¶ 27.

Plaintiff maintains that it is a recognized leader in the field of alcoholism and drug addiction treatment. *Id.* ¶ 30. In recent years, Plaintiff has served tens of thousands of people who struggle with mental health and substance abuse. *Id.* ¶ 31. In 2021, Plaintiff served over 7,000 people with alcohol and/or drug addiction. *Id.* Plaintiff offers seven different facilities with 106 residential and detox beds and 20 Recovery Living and Transitional Housing units that provide clean, safe, drug-free living environments for clients and their families. *Id.* ¶ 32.

## III. OHA Audit Process

The State contracts with providers such as Plaintiff to deliver healthcare services to Oregonians in certain public health programs. *Id.* ¶¶ 6-7, 58 (alleging that

Plaintiff is a "provider" subject to OAR chapter 407, division 120); *see also* OAR 407-120-0100(31) (defining "provider" as an "individual, facility, institution corporate entity, or other organization which supplies or provides" services "pursuant to a contract."). OHA reimburses providers for the services delivered to covered individuals. FAC ¶¶ 6-7. Because it participates in these programs, and receives public funding, Plaintiff is subject to regulations administered by OHA. Defs. Mot. to Dismiss ("MTD") at 3; *see generally* OAR Chapter 309, OAR Chapter 407, OAR Chapter 410.

The OARs set forth requirements for providers to document the healthcare services delivered to Oregonians and for which providers received reimbursement from OHA. *See, e.g.*, OAR 309-019-0135(3) (requiring providers to conduct an entry assessment to ensure that an individual receives certain services and that those services are documented). Among other things, a provider's documentation must support the reimbursements that the provider obtained from OHA, must describe the relationship of the services to the treatment objective described in the service plan, and must include periodic updates regarding the patient's progress. OAR 410-120-1360(2) (stating that documentation must "support[s] the specific care, items, or services for which payment has been requested."); OAR 309-019-0140(3)(d) (stating that documentation must include "relationship of the services provided to the treatment objective described in the service plan"); OAR 309-019-0140(3)(g) (stating that documentation must include "[p]eriodic updates describing the individual's progress").

The regulatory scheme also subjects providers such as Plaintiff to potential audits from OHA to ensure compliance with rules governing reimbursement from state public health programs. OAR 410-120-1396(1). OHA can recover an "overpayment" if an audit reveals that a provider submitted a claim for payment that did not comply with the agency's statutes and rules. *Id*. Audits under OAR Division 410, Chapter 120 are a multi-step process. First, after reviewing information submitted by the provider, the OHA auditor produces a preliminary audit report. OAR 410-120-1396(10). If the provider disagrees with the preliminary audit report's findings, the provider can submit additional information. *Id*. Then, the auditor prepares a final audit report. OAR 410-120-1396(11).

The final audit report includes an overpayment amount, findings, and recommendations. *Id*. Once a provider receives a final audit report, it can submit a "written request for either an administrative review or a contested case hearing" if the provider disagrees with the report or the overpayment amount. OAR 410-120-1396(11)(c). Contested case hearings challenging audit findings are conducted in front of an administrative law judge ("ALJ"). OAR 137-003-501, *et seq*. The hearings are full adversarial proceedings in which the parties are represented by counsel, may present evidence and witnesses, and may cross-examine the other side's witnesses. OAR 137-003-0600.

Prior to the hearing, the agency or party may request discovery in five different categories: (1) a list of witnesses expected to testify at the hearing; (2) documents that the party or agency plans to offer as evidence; (3) objects for inspection if the party or

agency intends to offer the objects as evidence; (4) responses to no more than 20 requests for admission; and (5) responses to no more than 20 written interrogatories. OAR 137-003-0566(1)(a)-(e). If a party desires additional discovery, it can request it from the agency and if the request is denied, file a motion with the ALJ for an order requiring the discovery. OAR 137-003-0568(7). The ALJ may authorize discovery "reasonably likely to produce information that is generally relevant to the case and necessary or likely to facilitate resolution of the case." OAR 137-003-0568(4). Further, a party before an agency can issue public records requests for additional information. OAR 137-003-0566(9). However, a party in a contested case proceeding is not entitled to take discovery depositions. Instead, depositions are generally used to preserve the testimony of witnesses who will be unavailable for the hearing, not for discovery purposes. OAR 137-003-0572(2).

## IV.    OHA Audit of Willamette Family

In February 2014, OHA reviewed Plaintiff's documentation of its services to determine whether it was "delivering services in compliance with the [OARs]." FAC ¶ 41. OHA found that Plaintiff used an electronic service plan that, at least in part, did not comply with the OARs. *Id*. OHA and Plaintiff worked together to create a new service plan compliant with the OARs. *Id*. In 2015, Plaintiff submitted a "Plan of Correction" which included staff training to use the new service plan Plaintiff created with OHA. *Id*. ¶ 42. OHA approved of the plan and issued a Certificate of Approval set to expire on February 28, 2018. *Id*. Plaintiff believed it was in full compliance with all OHA's directives for that period. *Id*. ¶ 43.

On February 27 and 28, 2018, OHA initiated six audits of Plaintiff's services rendered between January 2014 and December 2015, involving around 84,000 individual claims, the results of which amount to $10 million dollars in potential liability if OHA finds Plaintiff out of compliance and does not adjust its calculation. *Id*. ¶ 45. The overarching error described in the audits is Plaintiff's "insufficient descriptions for services provided." *Id*. ¶ 48. In response to the audits, Plaintiff has produced over 220,000 documents to OHA. *Id*. ¶ 46.

OHA auditors possess broad discretion in conducting audits and, in this case, did not review each of the 84,000 claims, but reviewed a small, randomized sample, identified documentation errors, and multiplied that error rate across the entire range of claims for all six audits, regardless of the size, scope, amount, or nature of the claims. *Id*. ¶¶ 47, 49. OHA did not dispute that Plaintiff rendered the services for which OHA paid Plaintiff, but nevertheless sought full reimbursement based on deficient descriptions of those services. *Id*. ¶ 49.

Plaintiff alleges that it has been unsuccessful in obtaining from OHA information concerning the methodology auditors followed and whether it comports with generally accepted principles, standards, or applicable law and cannot determine from OHA what sample of claims chosen for the audits was random. *Id*. ¶ 50. Since the audit began, Plaintiff asserts that OHA has reassigned the audit to several different auditors who, in turn, revised upward or downward the "sample error rate" used in the calculation of the amount Plaintiff owes. *Id*. ¶¶ 50-56. Of the six audits undertaken by OHA, only three final audit reports have been issued. *Id*.

The first final audit report recommended that OHA recover $6,089.71 in overpayments. *Id.* ¶ 51; Jindal Decl. Ex. 1 at 8. The second final audit report recommended that OHA recover $52,879.29. *Id.* ¶ 52; *Id.* Ex. 2 at 12. The third final audit report recommended that OHA recover $2,618,655.21. *Id.* ¶ 53; *Id.* Ex. 3 at 1.

Plaintiff requested contested case hearings in response to all three final audit reports. FAC ¶¶ 51-53. In advance of those hearings, Plaintiff requested certain discovery. *Id.* ¶¶ 60-63, 75-76. Plaintiff sought to take the deposition of the original OHA auditor assigned to the audits, Deborah Larkins. *Id.* ¶¶ 75-76. OHA denied those deposition requests, citing deficiencies in the requests and the rule that only permits pre-hearing perpetuation depositions, not discovery depositions. *Id.* ¶¶ 58, 63, 66-78, 90-92; Jindal Decl. Exs. 4-5. OHA also noted that any OHA witnesses would be subject to cross-examination at the hearing. Jindal Decl. Ex. 5 at 2.

Plaintiff asserts that OHA has produced "some documents" in response to Plaintiff's discovery requests, but not "sufficient data[.]" FAC ¶¶ 60, 62, 89. Plaintiff has not yet sought an order from the ALJ requiring OHA to produce additional document discovery. *See id.* ¶¶ 59-63 (describing discovery efforts).

The contested case hearings on the first two audits were consolidated into a single proceeding, and the parties have agreed to defer a hearing on the third audit until after the hearing on the first and second is complete. MTD at 6; Jindal Decl. Ex. 7. In July 2022, the ALJ overseeing the hearing scheduled OHA to present its case-in-chief the week of January 30, 2023, and six weeks later, the ALJ will hear Plaintiff's defensive case, starting March 13, 2023. Jindal Decl. Ex. 8. The parties

will exchange witness lists and proposed exhibits two weeks before OHA begins its case-in-chief.  *Id.*

## V.    Plaintiff's Legal Challenges to OHA Audit Process

In its First Claim for Relief, Plaintiff alleges that OHA's audit process violates its due process right to property under the Fourteenth Amendment.  FAC ¶¶ 85-94. Plaintiff contends that, by refusing to produce sufficient information about the methodology of the audits and make auditors available for deposition, OHA has denied Plaintiff basic procedural protections against the financial liability OHA may assess against Plaintiff.  *Id.* ¶¶ 86-89.   The property interest Plaintiff identifies is its "interest in reimbursement by OHA for the services that [Plaintiff] provided to its patients during the audit year."  *Id.* ¶ 88.  If forced to repay "even a fraction" of the potential $10 million dollar liability assessed, "it would force [Plaintiff] to close its doors forever."

In its Second Claim for Relief, Plaintiff asserts that OAR 309-019-0140(3)(d), and OAR 309-019-0140(3)(g) are each unconstitutionally vague as applied to Plaintiff. Plaintiff maintains that the challenged rules "leave unfettered discretion in the hands of OHA auditors" leading to "arbitrary and discriminatory enforcement."  FAC ¶¶ 98, 99.

In its Third and Fourth Claims for Relief, Plaintiff seeks declaratory judgement on its first two Claims.  *Id.* ¶¶ 100-102, 103-105.  In its Prayer for Relief, Plaintiff asks the Court to order Defendants to produce discovery related to the audits; for an injunction dismissing any claims OHA has against Plaintiff for errors

that rely on the challenged OARs; for an injunction staying the contested case hearing until Defendants have complied with all the above. *Id*. at p. 37 (prayer for relief).

Plaintiff's Motion for Preliminary Injunction seeks an order enjoining the hearing set for January 2023 to maintain the status quo until this Court hears Plaintiff's claims alleged in its FAC. Pl.'s Mot. Prelim. Inj. at 14. In the alternative, Plaintiff asks the Court to order, in Plaintiff's pending administrative case, expedited discovery into the details of the audits so that Plaintiff can learn—before the hearing—the facts OHA plans to unveil. Defendants move to dismiss all claims under FRCP 12(b)(1) and 12(b)(6), as well as invoking the abstention doctrine first announced in *Younger v. Harris*, 401 U.S. 37 (1971).

## LEGAL STANDARDS

### I.    Motion to Dismiss

Under FRCP 12(b)(6) a claim must be dismissed when it "fail[s] to state a claim upon which relief can be granted." The facts alleged in the complaint must amount to a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 622, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is plausible on its face if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The complaint must be dismissed if the factual allegations allow only "a sheer possibility that the defendant has acted unlawfully." *Id*. When a court considers a motion to dismiss, the court construes all allegations of the complaint in the plaintiff's favor. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).

A motion seeking dismissal on abstention grounds can be filed under Rule 12(b)(1). *See Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 923 (E.D. Cal. 2021) ("A motion to dismiss on *Younger* abstention grounds is . . . properly brought under Rule 12(b)(1)."). Rule 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction. "[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined to the four corners of the complaint—it may consider facts and need not assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction. *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n. 4 (9th Cir. 2006).

## II.    Preliminary Injunction

Granting a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

## DISCUSSION

Defendants move to dismiss based on the *Younger* abstention doctrine under Rule 12(b)(1) and 12(b)(6). MTD at 8. Specifically, Defendants maintain that this

Court must abstain from enjoining ongoing state enforcement proceedings and assert that Plaintiff has no constitutionally protected property interest in healthcare reimbursements from the State; that Oregon administrative hearings comport with due process; that OHA's audit regulations provide fair notice of the information Medicaid providers must include in their bills; and that Plaintiff's claims are unripe.

## I. Motion to Dismiss / Younger Abstention Doctrine

The *Younger* doctrine requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings. *Younger*, 401 U.S. at 43–44. The *Younger* doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The Ninth Circuit recently explained the *Younger* framework as follows:

> *Younger* applies only to three categories of cases. . . 1) ongoing state criminal prosecutions; 2) certain civil enforcement proceedings; and 3) civil proceedings involving certain orders ... uniquely in the furtherance of the state courts' ability to perform their judicial functions. If a state proceeding falls into one of these three categories, *Younger* abstention is applicable, but only if the three additional factors . . . are also met: that the state proceeding is 1) ongoing; 2) implicate[s] important state interests; and 3) provide[s] adequate opportunity . . . to raise constitutional challenges.

*Applied Underwriters*, 37 F.4th at 588 (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (other citations and quotations omitted). Finally, for *Younger* to apply, the federal court action must enjoin the state proceeding or have the practical

effect of doing so.  *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004).  In this case, all elements for *Younger* abstention are met.

## A.    *Case Characteristics Meet "Civil Enforcement" Category*

First, Plaintiff's underlying administrative case falls into the category of "civil enforcement" proceedings.  *See Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (applying *Younger* to civil suit by the state's human services department to recover welfare payments wrongfully obtained).

Plaintiff asserts that OHA's audit is too far removed from those civil cases in which the Supreme Court or the Ninth Circuit apply the *Younger* abstention.  Pl.'s Resp. at 12.  Plaintiff reasons that its administrative proceeding is not "quasi-criminal" in that OHA does not accuse it of failing to provide the services it billed for, or of fraud, and that OHA is not imposing penalties or filing charges, and that the audits are not accompanied by any parallel state criminal proceeding.  *Id.*

However, civil enforcement actions to which *Younger* has been held to apply include administrative proceedings, and are characteristically initiated to sanction the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act. *Sprint*, 571 U.S. at 79.  In cases of this category, a state actor is routinely a party to the state proceeding; a state actor initiates the action; investigations are commonly involved; and the investigations often culminate in the filing of a formal complaint or charges.  *Id.* at 79-80.

Moreover, the sanctions or penalties involved in civil cases where abstention was held proper are not necessarily "quasi-criminal" in the nature that Plaintiff

describes. *See Middlesex*, 457 U.S. at 427, 433–34 (state-initiated disciplinary proceedings against lawyer for violating ethics rules could result in "private reprimand"). Contrary to Plaintiff's characterization, the range of penalized activities in *Younger* abstention cases are not necessarily quasi-criminal in nature— *e.g.* fraud—or accompanied by a parallel criminal case or charge. *See Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629 (1986) (commission investigated employment discrimination claim, issued a proposed "consent order" requiring reinstatement of employee with backpay, and initiated administrative proceedings to enforce).

Here, OHA's audit proceedings are "state-initiated" proceedings to investigate Plaintiff for the act of obtaining state public health funds in violation of OHA's regulations. OHA's audits include investigative activities. OAR 410-120-1396(5) (permitting auditors to gather evidence and interview witnesses). After reviewing information from the provider, OHA's auditors issue a preliminary report, review any additional information from the provider, before issuing a formal complaint or charge: the final audit report. OAR 410-120-1396(7). Accordingly, the Court finds that the administrative audits and contested case Plaintiff seeks to enjoin constitute a civil enforcement action—the threshold determination in *Younger* analysis.

**B.    State Proceeding is Ongoing; Implicates Important Interests; and Provides Opportunity for Constitutional Challenge**

Courts also consider whether the challenged state proceeding is ongoing; implicates important state interests; and provides adequate opportunity to raise constitutional challenges—the three "additional factors" identified in *Sprint* that

must be satisfied before a court may invoke the *Younger* abstention doctrine. *Sprint*, 571 U.S. at 70.

First, the state proceeding must be "ongoing." *Id.* Here, the parties do not appear to dispute that factor. OHA initiated its audits in March 2018 and requested and received information pertinent to all six audits. FAC ¶¶ 45, 51-56. OHA's auditors issued final audit reports for three of the six audits in 2018, 2019, and 2021, respectively. *Id.* ¶¶ 50-52. Plaintiff requested contested case proceedings challenging each audit report within 30 days of each audit report's issuance. *Id.* ¶¶ 51-53. At the time Plaintiff filed its initial Complaint, an ALJ had been assigned to oversee Plaintiff's contested case with OHA and a hearing was pending. *See* Pl.'s Compl. at 31 (requesting stay of pending contested case hearing). Accordingly, these audit proceedings are decisively "ongoing." *See Hirsh v. Justices of Supreme Court of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (holding that state proceedings were ongoing where state filed notice to show cause prior to full administrative hearing).

Second, the state proceeding must implicate important state interests. *Sprint*, 571 U.S. at 70. When evaluating *Younger's* second factor, this Court must look to "the importance of the generic proceedings to the state," not to the specific concern of the particular proceeding. *New Orleans Pub. Serv. Inc. v. Council of New Orleans (NOPSI)*, 491 U.S. 350, 365 (1989). As the Supreme Court has held, an enforcement action "vindicate[s] important state policies" when the state seeks to "safeguard[] the fiscal integrity of" a public assistance program. *Trainor*, 431 U.S. at 444 (state administration of welfare program). Similarly, the Ninth Circuit has explained that

state regulations governing the reimbursement rates for healthcare providers are specifically an important state interest because such regulations are designed to "insure low-cost, high quality health care" for citizens. *Delta Dental Plan of California, Inc. v. Mendoza*, 139 F.3d 1289, 1295 (9th Cir. 1998) (disapproved of on other grounds by *Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001)) (addressing California regulations governing insurance reimbursement rates for dentists).

OHA administers state healthcare programs, including the Oregon Health Plan and state Medicaid, and has a budget of nearly $30 billion, Oregon's largest budget item. H.B. 5024, 81st Leg. Assembly, Reg. Sess. (Or. 2021); MTD at 10. The purpose of those government programs is "to achieve the goals of universal access to an adequate level of high quality health care at an affordable cost." ORS 414.018(1). As an entity that contracts with OHA to provide health services to Oregonians in these programs, those contracted providers, like Plaintiff, are subject to a body of state statutes and regulations that ensure, among other things, that taxpayer funded healthcare services are adequately and accurately documented. *See, e.g.*, OAR 410-120-1360(2) (requiring documentation that "supports the specific care, items, or services for which payment has been requested"). The statute delegating authority to OHA to audit providers such as Willamette Family explains that the purpose of auditing is to "discover possible instances of fraud, waste, and abuse in the Medicaid member program." OAR 410-120-1396.

Accordingly, the Court finds that enforcing state statutes and regulations pertaining to the expenditure of public healthcare funds is therefore an important

state interest, because it furthers the legislative purpose of providing low-cost, high-quality healthcare and discovering waste, fraud, and abuse in Oregon's largest budget item. "The goal of *Younger* abstention is to avoid federal court interference with uniquely state interests such as preservation of these states' peculiar statutes, schemes, and procedures." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1150 (9th Cir. 2007). Here, the "uniquely state interests" in administering its regulatory schemes and procedures are at the core of this dispute.

Third, the state proceeding must provide an adequate opportunity to raise federal constitutional challenges. *Sprint*, 571 U.S. at 70. "[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). To avoid abstention, Plaintiff must demonstrate that "[s]tate procedural law bar[s] presentation of [Plaintiff's] claims." *Id.* at 14.

Here, Plaintiff may raise federal constitutional challenges—including those raised here—at the pending contested case hearings. *See Ceaser v. Dep't of Hum. Servs.*, 311 Or. App. 702, 712, 493 P.3d 66, 73 (2021) (review of ALJ's final order involving petitioner's federal due process challenge raised in contested case with Department of Human Services); *cf. Llewellyn v. Board of Chiropractic Examiners*, 318 Or. 120, 127-28 (1993) (holding that appellant failed to preserve procedural due process challenge by not raising it with the agency first). In state judicial review proceedings challenging administrative decisions, Oregon's appellate courts can also address challenges to OARs on "void for vagueness" grounds. *See Ceaser.*, 311 Or.

App. at 712 (reviewing petitioner's claim that agency rule was "vaguely crafted as to permit arbitrary or unequal application and uncontrolled discretion."); *see also Pulito v. Oregon State Bd. of Nursing*, 366 Or. 612, 624 (2020) (invalidating OAR for lacking "discernable, predictable" terms on other grounds where petitioner had abandoned her Fourteenth Amendment argument on review).

Finally, for *Younger* to apply, the federal court action must enjoin the state proceeding or have the practical effect of doing so. *Gilbertson,* 381 F.3d at 978. There is no dispute that an injunction of the state proceeding is what Plaintiff seeks here. *See* FAC at 37 ("prayer for relief"); *see generally* Pl. Mot. Prelim. Inj. (ECF No. 26). No party addresses whether any exceptions to the *Younger* abstention doctrine apply. Therefore, the Court concludes that it must abstain from deciding this case and that Plaintiff's claims must be dismissed.

## II.     Motion for Preliminary Injunction

As previously noted, granting a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22. Here, Plaintiff cannot demonstrate satisfaction of the first two elements necessary to succeed on its motion for preliminary injunction. Specifically, Plaintiff has not demonstrated that it is "likely to succeed on the merits" or that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Id*. at 20. First, the Court is barred from deciding merits. *See Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 731 (9th Cir. 2017) ("If the cases had been properly dismissed on *Younger* grounds, there would be no need to

reach the merits of the preliminary injunctions."). Second, "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiff alleges that "Defendants threaten $10.4 million in recoupment from Willamette Family," and that "[w]ithout disclosure of the underlying audit data or limited depositions of key individuals, [Plaintiff] cannot have a meaningful opportunity to respond to the charges against it." Mot. Prelim. Inj. at 17-18.

Whether it concerns the three final or three incomplete audits, Plaintiff's due process claims allege injury that is speculative. For the incomplete audits, they remain in an investigative stage. *Id.* ¶¶ 54-56. OHA has yet to execute final audit reports with respect to those remaining investigations and it is speculative whether OHA will ever issue audit reports with adverse findings against Plaintiff, whether Plaintiff will disagree with the findings, or whether Plaintiff will pursue contested case proceedings. For the complete audits at issue in Plaintiff's pending contested case, it is speculative what level of pre-hearing discovery Plaintiff will obtain, whether OHA or the ALJ will deny Plaintiff's hypothetical discovery requests, and whether those hypothetical denials will violate due process as applied to Plaintiff. "A plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs.,* 844 F.2d at 674. Accordingly, Plaintiff's Motion for Preliminary Injunction must be denied.

## III.   Attorney Fees

Defendants move for attorney fees.  MTD at 26.  This Court, under 42 U.S.C. § 1988(b), has discretion to award reasonable attorney's fees to the prevailing party in an action under 42 U.S.C. § 1983.  Fee awards to defendants in Section 1983 actions are only awarded in "exceptional circumstances."  *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990); *see also Patton v. Cnty. of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988) ("The mere fact that a defendant prevails does not automatically support an award of fees.").  Finally, a fee award is appropriate to prevailing defendant only where a plaintiff's suit is unreasonable, frivolous, or without foundation.  *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (quotations omitted).  The Court finds that Plaintiff's suit is neither unreasonable, frivolous, nor without foundation. Therefore, the Court declines to exercise its discretion to award fees.

## CONCLUSION

Plaintiff's suit raises alarm at an urgent situation in Oregon: a crisis of mental health and dangerous levels of substance abuse, combined with the dire need for the services Plaintiff provides to thousands facing those exact devastating challenges. Because the factors of the *Younger* framework are met, no exceptions apply, and Plaintiff's federal action would enjoin the ongoing state proceedings, the Court finds abstention is required as a matter of law.  To rule on the constitutional issues in these circumstances would interfere with the state's interest in the administration of its regulations and would "put the federal court in the position of making a premature ruling on a matter of constitutional law."  *Gilbertson*, 381 F.3d at 984.  Thus, even in this desperate situation, the interests of comity counsel restraint.

For the reasons explained, Defendants' Motion to Dismiss, ECF No. 19, is GRANTED. Plaintiff's Motion for Preliminary Injunction, ECF No. 26 is DENIED. Defendants' Motion for Stay of Discovery and Depositions, ECF No. 24, is DENIED as moot.

IT IS SO ORDERED.

Dated this 30th day of November 2022.

_____/s/Ann Aiken_____

Ann Aiken
United States District Judge